## STATE OF IOWA v. ED LEWIS, Appellant.

**Criminal Law:** EVIDENCE: *Res gestæ.* The declaration of one injured in an affray, as to the manner of the injury, made so near the time and place and so connected with the transaction as to be a spontaneous utterance, affording a reasonable explanation of what happened, is admissible as part of the *res gestæ.*

**Same:** MURDER: SELF-DEFENSE: ADMISSIONS: EVIDENCE. Although defendant, under a plea of self-defense to a charge of murder, admitted that he struck deceased with a deadly weapon at the time and place as alleged, causing death, still it was competent to show the character of the instrument and the nature of the wound, as bearing upon the question of whether more force than necessary was used in repelling the attack; and also as bearing on the question of intent or motive.

**Murder:** SELF-DEFENSE: EVIDENCE. Evidence reviewed and held insufficient to establish a plea of self-defense to the charge of murder.

*Appeal from Polk District Court.*—HON. HUGH BRENNAN, Judge.

SATURDAY, JUNE 6, 1908.

REHEARING DENIED TUESDAY, SEPTEMBER 29, 1908.

THE defendant was convicted of murder in the second degree, and appeals.— *Affirmed.*

*W. H. Wallingford,* for appellant.

*H. W. Byers,* Attorney General, and *Chas. W. Lyon,* Assistant Attorney General, for the State.

LADD, C. J.— The defendant and the deceased, Louis Upwood, were employed by the Chicago Great Western Rail-

way Company as car cleaners. In the evening of April 3,
1907, a dining car was assigned to defendant,
and a parlor car to deceased, each to be cleaned
and supplied with coal, ice, and water. The
dining car required some repairs, so that it was not placed on
the coach track, where this work was to be done, until nearly
2 o'clock in the morning of April 4th. Next, west of it, was
a mail car, and, immediately beyond, the parlor car. A
postal clerk was sleeping in the mail car, and testified that he
was awakened by the statement of defendant that it was 2
o'clock; that the latter was swearing, and said, " G——d
d——n you, you are always taking my tools, I must have
that," to which Upwood replied, " I will be through with it
in just a minute, and then you can have it;" that defendant
responded, " It is now 2, and this car leaves at 5 : 10, and
I have only three hours to do this work, and must have it; I
must have the pick;" that Upwood replied, " The car never
leaves at 5 : 10 since I have been here, for I go over on that
car every morning;" that defendant said, " That is the time
for it to leave, and I am going to have that pick;" that about
then he heard defendant say, " G——d d——n you, I will,"
without hearing the rest, and then heard a noise, as he
thought, of a blow. He ran to the car door, and as he opened
it saw defendant running past and go around the end of the
dining car. When he had disappeared, the witness looked the
other way, and saw Upwood, staggering about twenty-five feet
away, turn about and call " Ed," twice, and then walk toward
the mail car. The witness noticed that he was bleeding, and
asked, " What is the matter, brother ? " An objection as in-
competent and immaterial being overruled, the witness an-
swered that Upwood said: " Lewis hit me in the head with
the pick, and I want to go over to the shanty. Will you go with
me ? " The ruling was right, for the declaration was a part
of the res gestæ. *Alsever v. Railway,* 115 Iowa, 338; *State
v. Jones,* 64 Iowa, 349. It was near enough in time and
place, and so connected with the transaction as clearly to

1. CRIMINAL LAW:
evidence:
*res gestæ.*

appear to be a spontaneous and unpremeditated utterance, affording a reliable explanation of what had happened.

II.   The deceased was wounded back and somewhat above the ear, the end of the pick penetrating the skull into the brain about 1½ inches.   The pick was identified, and shown to have been stained with blood, in which there were hairs.   At an autopsy the upper portion of the skull, showing the fracture, was removed, and it with the pick was introduced in evidence.   When offered, defendant admitted in open court that at the time and place alleged he struck deceased with a pick, then and there in defendant's hands, that the pick was a deadly weapon, and that said blow caused the death of deceased.   Based on this admission, defendant objected to the testimony, as incompetent and immaterial.   The objection was overruled, and rightly so.   The indictment charged murder in the first degree, and the defendant claimed to have acted in self-defense.   If deceased did first strike at defendant, the character of the weapon employed by the latter and the nature of the wound inflicted by him had a bearing on the inquiry as to whether any more force than reasonably necessary was employed in repelling the attack.   Moreover, these matters had a bearing on the intent or motive which actuated defendant in what he did, and the location of the fracture tended to sustain the state's theory that deceased was struck when leaning forward, with his head down, and in that way to rebut the theory that it was made in self-defense.   It did not lie in the power of the defendant, by this general admission to prevent the state from proving all the facts, and thereby present to the jury the picture of the entire transaction relied on for conviction.   Doubtless there are many cases where courts should and do preclude proof upon the admission of essential facts, but rarely where the intent or motive is involved, and may be inferred from such proof. As supporting these views, see *State v. Powell,* 5 Pennewill (Del.) 24 (61 Atl. 966); *Dunning v. Railway,* 91 Me. 87

2.  SAME: murder: self-defense: admissions: evidence.

(29 Atl. 352, 64 Am. St. Rep. 208); *Commonwealth v. Miller,* 3 Cush. (Mass.) 243, 250; *Commonwealth v. McCarthy,* 119 Mass. 354; *State v. Winter,* 72 Iowa, 631. Even though the evidence might have been excluded, proof of what has been admitted ordinarily cannot be regarded as prejudicial. *Smith v. City of Seattle,* 33 Wash. 481 (74 Pac. 674); *Jones v. Allen,* 85 Fed. 523 (29 C. C. A. 318); *Whiteside v. Lowney,* 171 Mass. 431 (50 N. E. 931); *Davis v. Emmons,* 32 Or. 389 (51 Pac. 652); Wigmore on Evidence, section 2591. In *State v. Vance,* 119 Iowa, 685, the evidence held to have been erroneously admitted was not concerning the transaction complained of, but of other offenses offered for the purpose of proving intent. The accused had admitted that the indecent exposure of his person, if made, was intentional, and the jury could not properly consider the evidence for any other purpose. Unless consideration of such evidence is so limited it is likely to be extremely prejudicial. The case is to be distinguished from those in which evidence is of the transaction directly involved, and tends to prove the essential facts of the crime.

III. Appellant's last contention is that the evidence conclusively shows that the killing was in self-defense. According to his story, he tried to induce Upwood, when fastening the hose to the water pipe, to allow him to use the hose first. Deceased roughly refused, and defendant took a bucket of ice from the ice platform into the diner, and upon returning found the ice pick gone. It was near deceased, and he went over and picked it up, whereupon the latter commanded, " Drop that pick, and get away from here." Defendant replied, with an oath, " I will do my work first." To this Upwood responded, also with an oath, " Get away from here, or I will knock your brains out with this bucket," and raised the bucket and struck at him. Defendant then struck at deceased with the pick, " blindly, you may say, dropped it, and ran." It will be observed that this account does not tally entirely with the testimony of the

3. MURDER:
self-defense:
evidence.

postal clerk, and that in so far as appears the defendant could have avoided the necessity of striking the blow by desisting from taking the tools, and the jury might so have found. The location of the wound throws doubt on defendant's story, as does other evidence that no pail such as described was to be found in that vicinity.    But four were used, and three of these had ice or water in them, and the other, a tin pail, was in the diner when another took defendant's place to complete the work assigned him.    And it required less than an hour to do this, although defendant claimed to have insisted to deceased that he must have the tools to enable him to finish by 5 o'clock in the morning. After explaining the transaction to the officers who arrested him, he added significantly that he was " a Southerner, and would not allow any man to run over him.    While he is getting me, I will be getting a piece of him."    Defendant was a much smaller man than deceased, but we are satisfied that the evidence fairly put in issue whether the latter was the aggressor, and, even if he was, whether the killing was in necessary self-defense.

The record is without error, and the judgment is *affirmed*.