STATE OF IOWA, Appellee, v. MAX STRUM, Appellant.

**APPEAL AND ERROR:** Absence of Brief Point. "Brief" points 1, 7 limit review of appeal.

LARCENY: Value in Absence of Market. One may testify as to the reasonable value of a stolen secondhand article in a given locality and at a given time. even though *no general market then exists* in said locality for such an article, when it appears that he had knowledge, at the time in question, of the nature, use, condition, and original cost value of said article.

CRIMINAL LAW: Avoiding Evidence of Other Offenses. Evidence of offenses other than that charged is not admissible, when the accused solemnly admits the existence of every fact which such other offenses would tend to prove. So held in a prosecution for receiving stolen property.

LARCENY: Issue, Proof, and Variance. Whether there is a fatal failure of proof, when an indictment for larceny, or for receiving stolen property, alleges the stealing or the receiving of several articles *of a lump sum value*, and the evidence shows that some of the articles were not stolen, or not received, *quaere*.

LARCENY: Articles Severed from Realty. Articles and things severed from the realty may be the subject of a subsequent larceny.

CRIMINAL LAW: Variance in Proof. No variance occurs by permitting evidence of a "force-feed lubricator" which is described in the indictment as a "self-feeding lubricator."

APPEAL AND ERROR: Absence of Brief Point.
1, 7

RECEIVING STOLEN GOODS: Proof of Value. Value may be established, in a prosecution for receiving stolen goods, by showing the value *when the property was stolen*, and that no change has taken place in the property up to the time of the felonious receiving.

CRIMINAL LAW: Affirmative Showing of Error. He who claims that a specified instruction does not cover a certain point must affirmatively show that said point is not covered in any of the other instructions.

CRIMINAL LAW: Duty of Jury to Convict. It is not error to instruct the jury that they *should* find the accused guilty provided they find, beyond a reasonable doubt, the existence of every fact upon which his guilt depends.

CRIMINAL LAW: Indefinite Assignment. An assignment of error is wholly insufficient which simply asserts "that the court erred in overruling defendant's motion for a new trial, and that a

new trial should have been granted, under the record in the evidence."

*Appeal from Black Hawk District Court.*—C. W. MULLAN, Judge.

NOVEMBER 22, 1918.

APPEAL from a conviction for receiving stolen property. —*Reversed and remanded.*

*V. L. Belt* and *Mears & Lovejoy,* for appellant.

*H. M. Havner,* Attorney General, and *F. C. Davidson,* Assistant Attorney General, for appellee.

SALINGER, J.—I. Whatever effect upon the right to review the presence or absence of an adequate point, under the caption "Errors Relied.Upon for Reversal," may have, it is thoroughly well settled that nothing will

1. APPEAL AND ERROR: absence of brief point.
be reviewed which is not included in some "brief point." Under this limitation, the only question we have as to the propriety

of receiving testimony on the value of the things stolen is raised by Brief Point 1, which, in effect, complains that the State made no attempt to prove the actual value, on the

2. LARCENY: value in absence of market.
theory that there was no market value; wherefore, it was error to permit a witness who shows he has no knowledge as to the

market value of any of these things, and who testifies there was no market value for such articles in Waterloo, to testify what the market value of these articles was in Waterloo. Further light is thrown upon the complaint by the citations in support of this proposition, to wit: *Engster v. State,* 11 Neb. 539 (10 N. W. 453) ; 34 Cyc. 529; *State v. Feinberg,* 145 Iowa 329. This complaint is directed to the witness Bird. He was a manager in the plant from which the property in question

was stolen. He says it is his duty to buy supplies and re-
pair parts for the machinery in the plant, and that he keeps
himself posted in regard to the prices. He shows he knows
the general nature of the things stolen, such as what they
were used for, where attached, the material of which they
were made, and how constructed, how much wear there was
on them, and their general condition at the time of taking,
their original cost, or the original cost of things like them,
their cost, new, and at the time taken. He says he knows
the price of the repair parts of this machinery. He has a
catalog from the Chicago Wrecking House people, who
quote "all secondhand goods." He admits he never bought
or sold a secondhand filler; that he has no knowledge of
any can filler that had been used for two years being sold
anywhere, and no knowledge of the value of the stolen prop-
erty; and he testifies he is familiar with the general mar-
ket value in Waterloo of the articles in question at the time
the indictment charges they were received by the defend-
ant. It is also true, however, that, at times, he seems to
base himself upon what the property stolen would be worth
to some buyer who had special use for them, or to himself,
and says he does not know what others would give. True,
also, he testifies there is no market for this stuff in Water-
loo, and that the Artificial Ice Company would be the ex-
clusive market, because it is the only ice plant in Water-
loo.

On this foundation, he was allowed, over apt objections,
to testify concerning the reasonable market value of some
of the articles alleged to have been stolen, giving their value
as of the time defendant is charged with receiving them.
The question is whether the reception of this testimony con-
stitutes error.

*Engster v. State*, 11 Neb. 539 (10 N. W. 453), lays
down the general proposition that, before a witness is com-

petent to testify as to the value of property, he must show by his testimony that he has knowledge of the value of such property. In that case, one witness, being asked whether he was a judge of clothing, answered, "Yes, of my own," and testified, too, that he "guesses he was a judge of the price of clothing." Another testified he had worked in a general merchandise store, and thinks he is acquainted with the value of clothing; and he was then permitted to testify as to value, though it nowhere appears he had purchased or sold clothing, or knew anything of its value. It was held that no competency was shown. But we think the rule is not thus strict in this jurisdiction. In *Jeffries v. Snyder*, 110 Iowa 359, we held that one owning or using household goods is competent to testify as to their value, without showing special qualifications enabling him to express an opinion. In *Colby v. Kimball*, 99 Iowa 321, it is held that, in the absence of specific objection to the competency of the witness, he may give his opinion as to the value of a piano, although he has not been expressly examined with respect to his knowledge of value, if he has so testified as to show that he knows something of pianos. In *State v. Finch*, 70 Iowa 316, we go so far as to hold that where, in a prosecution for the larceny of a sealskin overcoat, a witness testifies he had never seen such a coat bought or sold, and did not show he had any knowledge of the value of such an article, except such as any man of ordinary intelligence might be presumed to have, his testimony as to the value of the coat was admissible. In *State v. Hathaway*, 100 Iowa 225, it is held that, where the article stolen consists of a trunk containing the family wearing apparel, the wife of prosecutor, after testifying that she knew the value of the articles, is competent to testify as to such value, though she may not have known the value in a secondhand store, or at public auction. The holding of *McMahon v. City of Dubuque*, 107 Iowa 62, is that, on a negligent burning of household goods

and wearing apparel used by a family, the actual value, based on their cost, condition, and age, and not their market value, is the measure of damages. In *Latham v. Shipley,* 86 Iowa 543, there was no evidence that a machine used by printers, and possessing the same defects as the one in inquiry, was so common as to be considered in fixing prices, and no testimony that such had a fixed market value in Chicago; but it was held that one who was shown to have a practical knowledge of such machines, from his avocation as a printer, and to know something of their value from price lists, was competent to testify as to the value of the machine in question. And while the general market value of stolen property governs, in determining its value in case of larceny, when this property has no general market value, the original cost may be shown, in connection with its condition at the time of the larceny, to prove its value when stolen. *State v. Lewis,* 144 Iowa 483.

We incline to think that the objections to the testimony of Bird are not well taken.

II.  After the jury was empaneled, and before the opening statements were made, the attorney for the defendants made the following admission of record:

3. CRIMINAL LAW : avoiding evidence of other offenses.          "Comes now the defendant in open court, in the presence of the court and jury, and states that whatever act he did with which he is charged, he did it designedly; that it was not accidental or unintentional or through inadvertence; and that whatever he did, he did knowingly."

Over apt objection, testimony was admitted tending to show that the defendant had bought stolen property through a transaction not connected with the one being prosecuted for, and occurring prior to the act upon which the indictment is based. One defense of its admission made by the State is that evidence of the purchase of other stolen brass is admissible to show the intent, and the absence of mis-

take or accident; and the many cases cited for this proposition fully sustain the statement. But the question remains whether, since this is the *only* purpose for which such evidence is properly receivable, it may be adduced, over objection, when there is an admission of record that there was no accident or mistake, and that whatever was done was done intentionally and knowingly. On this question, the State relies upon *State v. Stansberry,* 182 Iowa 908, and some other decisions, including one in Kansas, which are fully considered in the *Stansberry* case. There is nothing in that case that permits evidence which is manifestly needless, and is calculated to arouse prejudice. The reasoning upon which the case is bottomed is that the bloody clothing of one assaulted, where it is charged there was an intent to murder, may be received in evidence, though the defendant concedes on the trial "that whatever described by Dr. Printz by the way of cuts resulting in loss of blood were made by this defendant, and made by him in the exercise of right of self-defense;" and its reasoning is that, since this concession does not admit an intent to murder, and, at most, amounts to no more than saying that the wounds were no worse than one witness for the State describes, such admission could not foreclose the right of the State to show, by the condition of the clothing, that the injury was more aggravated than the testimony of the doctor disclosed, and was of such character as to indicate an intent to murder. It is manifest that this case cannot rule, if it once be conceded that, in whatsoever the defendant here did, he acted, not by accident or mistake, but intentionally and knowingly; that it cannot rule where testimony is forced into the record which has no right to be there, except to show that the defendant did act intentionally, after he has solemnly admitted of record that this is so. We do not see that *McIntire v. State,* 10 Ind. 26, adds much to the position of appellant. It holds that it is error to per-

mit testimony tending to show that the *person of whom de-fendant had received the property* had stolen other proper-ty of the same kind from another person at a different time. On the other hand, *State v. Dexter,* 115 Iowa 678, cited by the State, certainly throws no light on the point in debate; for all it rules is that, on the charge of having obtained goods by false pretenses, evidence that defendant procured goods from others on the same representations is admissible. But in *State v. Vance,* 119 Iowa 685, it is held that, on a prosecution for lewdness, where the defendant admits, in open court and before the jury, that, if what is charged were, in fact, done, it was designedly done, it is error to admit evidence of other similar acts done in the presence of other parties, for the purpose of showing intent. The appellee intimates that the case is questionable authority. But it has been approved in *Sorenson v. United States,* 168 Fed. 785, at 794. Its rule is distinctly affirmed in *State v. Weaver,* 182 Iowa 921. It is approved in *State v. Crofford,* 121 Iowa 395, at 405, and dealt with approvingly in *State v. Berger,* 121 Iowa 581, at 586, *State v. Clark,* 160 Iowa 138, at 146, *State v. Neubauer,* 145 Iowa 337, at 345, *State v. O'Connell,* 144 Iowa 559, at 562, and *State v. Lewis,* 139 Iowa 405, at 408.

It was error to receive this testimony.

III.   It is asserted there is no competent evidence that the property stolen and alleged to be that of the Artificial Ice and Fuel Company of Waterloo was the property of that corporation.

Another point made is one that is not met by the State, because it misapprehends it. It is that, while an indictment for larceny is not defective because it specifies a number of articles as stolen, and alleges the value in a lump sum only, if the proof fails to show that some of the items specified were stolen, then there is a case wherein it

4. LARCENY: issue, proof, and variance.

cannot be known how much of the lump value named in the indictment should be allotted to the part stolen, and hence there is no allegation of value of each or all the items found to have been stolen. The point is clearly developed in 25 Cyc. 86; *Ware v. State,* 2 Tex. App. 547; *Meyer v. State,* 4 Tex. App. 121; *Doyle v. State,* 4 Tex. App. 253; *Thompson v. State,* 43 Tex. 268; *State v. Brew,* 4 Wash. 95 (29 Pac. 762). See, also, *State v. Buck,* 46 Me. 531; *State v. Hood,* 51 Me. 363; *State v. Glaze,* 177 Iowa 457. Upon neither point are we all agreed. Therefore, in analogy to *State v. Asbury,* 172 Iowa 606, at 616, we express no opinion upon either point.

IV. A point presented in the motion to direct verdict for the defendant is raised on the appeal, and is that a peremptory acquittal should have been directed, because the articles alleged to have been stolen and re-

5. LARCENY: articles severed from realty.

ceived were a part of the realty, and, therefore, not the subject of larceny. Related, is another ground of the motion to direct, that there was no evidence of non-consent, because Bird was in no position to testify as to whether or not the owners or managers or persons in control gave their consent to the taking. As to these, we have to say that, while it may be assumed, for the sake of argument, that the jury might have found that parts of machinery torn loose were so attached to the realty as that its detachment constituted a mere trespass, it may not be held that this is so as matter of law. Further, it does not follow that, because the original taking constituted a mere injury to realty, that what was detached from the realty might not thereafter become the subject of larceny, and be stolen. After this property was detached, it was taken from the plant and secreted, at least for some substantial period of time. If, thereafter, it was secretly taken possession of, without the consent of the owners, and with intent to steal, this might be larceny, even

though the property stolen was, at one time, and by the thief, detached from realty. As to the failure to show non-consent, the fact that Bird might not competently say that no consent was given by the owner, does not, of itself, constitute a failure to prove want of consent. His testimony is not all there is to establish non-consent. Those who stole the property themselves testified that no consent was given by anyone.

V. Under the rule that the "brief points" limit the review, one attack upon Instruction 6 is found in the assertion of Brief Points 6 and 7, to the effect that the court erred in making reference "to articles as having been stolen or received by the defendant which were not mentioned in the indictment." So as to Instructions 4, 7, and 8. The objection is bottomed on the fact that the instructions deal with a "force-feed lubricator," while the indictment specifies a "self-feeding lubricator." We think the exception is a strained one.

6. CRIMINAL LAW: variance in proof.

The same point is made, in a different form, by the statement that it is not proper to admit evidence of the value of the articles not alleged in the indictment to have been stolen. This refers to permitting Bird to say that the "self-feeding lubricator" was worth $25. The point is not well taken. The indictment does allege that just such a lubricator was stolen. Possibly the contention rests also on the fact that the witness spoke of the lubricator stolen as "a force-feed lubricator." To repeat, the point is a strained one.

VII. It is clear, by the testimony of the witness Bird, that only three globe valves were taken *in toto,* and that from some of the Jenkins globes, nothing but the "bonnet" was taken; and the court struck out all evidence relating to the globe valves not taken in whole, and from which the bonnets only were taken, on the ground that these

7. APPEAL AND ERROR: absence of brief point.

articles do not conform to the allegations in the indictment. The appellant excepted to this ruling, but seems now to think it of some advantage. It is not quite clear to us, but is probably the basis of the point that the indictment alleges the taking of "about twelve Jenkins globe valves," and that there is a fatal variance, because there was no evidence that the valves taken were Jenkins valves. We find no brief point raising that proposition,—none that presents the complaint that the proof of what was taken varies from the allegations of the indictment.

VIII.   It is seriously open to question whether charging what the jury was authorized to do if certain items and "other articles described in the indictment" were found to have been stolen, did not submit whether

8. RECEIVING STOLEN GOODS: proof of value.

some articles described in the indictment had been stolen which, though described in the indictment, were not shown to have been stolen. Should the evidence be the same on retrial, such instruction should not be given.

IX.   True, on the charge of receiving stolen property, the value of the property must be measured as of the time when it was received, and not the time when it was stolen. But if it competently appear what the value was when stolen, and further, there is evidence from which the jury may find that the condition of the stolen property remained unchanged, or substantially so, at the time when it was received, then testimony as to value at the time of the theft is not improper. We are of opinion there was evidence from which the jury could find there was no change in value between these two points of time, and that, hence, evidence received as to the value at the time the property was stolen, should not have been excluded because the ultimate question is value at the time of receiving. We do not think the complaint well taken that Objection 7 confuses the time of the theft with the time of receiving.

X. One complaint is that, by Instruction 12, the jury is told how to test the credibility of the testimony of the defendant as a witness, and that nothing is said about testing the credibility of other witnesses by the same standard, or any other. In the first place, we find no brief point raising the question. In the next, in the setting out of the instruction, the abstract does not claim that all of them are set out. The instructions are set out in chronological order, from 1 to 9, both inclusive, and following next to that is an instruction numbered 12—from which the inference is fair that a Number 10 and Number 11 were given. For all we can see, those instructions may have cured the alleged error.

9. CRIMINAL LAW: affirmative showing of error.

XI. Instruction 5 charges that defendant is presumed to be innocent of the crime charged, until proved guilty beyond a reasonable doubt; that this presumption prevails at all stages of the trial, and until every element necessary to constitute the crime of buying and receiving stolen property has been established by the State, beyond a reasonable doubt; that, however, it is not necessary the State should establish every essential fact in the case beyond a reasonable doubt, and if, upon a consideration of the whole case and all of the evidence adduced therein, the jury has no reasonable doubt of the guilt of the defendant, he should be found guilty, as charged in the indictment: *aliter*, if otherwise. The objection made is that the word "should" ought not to have been used; that its meaning is a command by the court to find the defendant guilty; that the word "may" should have been used instead, thus leaving it a matter of discretion with the jury whether, under this statement of facts, they should or should not find the defendant guilty. True, in *State v. Richardson*, 179 Iowa 770, we held that, even if a jury might have found that

10. CRIMINAL LAW: duty of jury to convict.

defendant was guilty of assault with intent to inflict a great bodily injury, because of his wanton negligence, an instruction that, if defendant was guilty of such negligence, he must be found guilty, was to be condemned. It will be noticed that, in the *Richardson* case, it did not necessarily follow, from the jury's finding such negligence, that there was the specific intent required to make out the crime charged. Consequently, the instruction invaded, and was held to invade, the province of the jury. But the question here is whether it is improper to tell a jury that, if· it finds every fact establishing guilt to be established beyond reasonable doubt, it should convict. Applied to such a finding, the direction that thereupon the defendant should be found guilty, does not interfere with the proper functions of the jury, and stops at directing it as to what the law expects of it when it finds guilt is established beyond all reasonable doubt.

XII. Another proposition urged is, almost literally, that the court erred in overruling defendant's motion for new trial, and that a new trial should have been granted, "under the record in the evidence in this case." These are too general to entitle to review.

11. CRIMINAL
LAW : indefi-
nite assign-
ment.

XIII. There is an assignment that the instructions were erroneous as a whole, because they are long and involved, and so complicated as that it is impossible for any intelligent juryman to understand what the court was trying to say to the jury, and the charge tended to confuse, rather than to give light upon any of the questions involved. It may well be doubted whether this is specific enough to entitle to review. But be that as it may, all that is practicable to say, within the reasonable length of an opinion, is that the charge, as a whole, is not open to this objection.

XIV. In *State v. Peirce,* 178 Iowa 417, at 422, *et*

*seq.,* we pointed out how conflicting the decisions were, upon when it was proper to give the jury an additional instruction, after there was failure for a long time to reach a verdict, and how difficult it was to determine from the decisions when the form of such an instruction was proper. We tried, in the *Peirce* case, to indicate what, if any, general rule might be deduced from the decisions as a whole, and proceeded to say that "the rule as above stated shows on its face how difficult it is to apply it with safety to the rights of the parties. That it is the one which our holdings compel, does not obviate its dangers. Therefore, though its wording is technically correct, and has often been approved, it will be better not to give it, unless it be in an extreme case." We shall not lengthen this opinion by setting out the instruction complained of, nor even an analysis of it. We thus refrain because there must be a reversal on other grounds, and no occasion may arise, on a retrial, to give such additional instruction.

For the errors pointed out in Paragraph 2 of the opinion, there must be a reversal.—*Reversed and remanded.*

PRESTON, C. J., LADD and EVANS, JJ., concur.