STATE OF IOWA, Appellee, v. FRANK KAPPEN, Appellant.

**INDICTMENT AND INFORMATION:** Allowable Amendment. An indictment charging the possession of burglar's tools, and describing the tools as "twelve keys," may be amended by adding to said description the words: "Made from spoons and other implements, the same being tools adapted, designed, and commonly used for committing the crime of burglary." (Sec. 5289, Code Supp., 1913.)

**CRIMINAL LAW:** Former Jeopardy—Discharge of Jury for Sickness. The jury may be discharged during the course of the trial when its number has been reduced by sickness, and the court may forthwith impanel a new jury and proceed with the trial anew. Such mistrial does not place the accused in legal jeopardy. (Sec. 5388, Code, 1897.)

**WITNESSES:** Examination—Nonleading Question. A question is not leading in form which asks a witness what certain keys "could be used for."

**BURGLARY:** Fact of Possession. In a prosecution for having possession of burglar's tools, the naked fact of *possession* is *prima facie* shown by testimony that such tools were found in the defendant's dwelling house, and in a part thereof actually used by him.

**CRIMINAL LAW:** Course and Conduct of Trial—Estoppel to Deny Guilty Intent. An accused who is on trial for an offense involving a specific guilty intent, and who succeeds in excluding all the State's evidence tending to show such guilty intent, by an admission of record that "whatever act he did do he did designedly, and not accidentally," will not, after conviction, be heard to say that the record is barren of evidence tending to show such guilty intent.

**BURGLARY:** Recent Burglaries as Evidence on Intent. On the trial of an indictment charging the possession of burglar's tools with *intent* to commit a burglary, the State, as bearing on said *intent*, may introduce testimony tending to prove recent burglaries, and that the fruits thereof were found in the defendant's possession.

**CRIMINAL LAW:** Reception of Evidence—Admission Controlling State's Evidence. The State, in its criminal prosecutions, should not be compelled, except under the sound discretion of the court, to accept the hypothetical admission of the defendant in lieu of evidence otherwise admissible, anything in *State v. Strum*, 184 Iowa

165, and *State v. Vance,* 119 Iowa 685, to the contrary notwithstanding.

*Appeal from Story District Court.*—E. M. McCALL, Judge.

DECEMBER 16, 1920.

REHEARING DENIED MARCH 11, 1921.

THE defendant was convicted of the crime defined by Section 4790, Code Supplement, 1913, viz.: of having burglar's tools or implements in his possession, with intent to commit the crime of burglary. He appeals.—*Affirmed.*

*J. F. Martin,* for appellant. ·

*H. M. Havner,* Attorney General, *F. C. Davidson,* Assistant Attorney General, and *Harry Langland,* County Attorney, for appellee.

EVANS, J.—Upon a search of defendant's residence, made by officers on the night of March 21, 1918, certain burglar's tools were discovered therein, consisting of 12 keys. He was arrested the same evening, and duly indicted.

I. The original indictment described the alleged burglar tools as "12 keys." Later, the county attorney caused the in-

1. INDICTMENT AND INFORMATION: allowable amendment.

dictment to be amended by adding to this specification the further description: "Made from spoons and other implements, the same being tools adapted, designed, and commonly used for committing the crime of burglary."

Defendant complains that proper notice of this proposed amendment was not given, and that the nature of the amendment was such as was not authorized by the statute. The record discloses no lack of proper notice. The nature of the amendment was just such as comes within the contemplation of the statute which expressly provides for amendment "in the description of any person or thing * * * described in the indictment." Section 5289, Code Supplement, 1913; *State v. Kiefer,* 183 Iowa 319.

II.  Defendant moved for a dismissal of the indictment on the ground that he had been in previous jeopardy.

A previous trial upon this indictment had been begun, by the selection of a jury and the introduction of some evidence, when one of the jurors became sick and unable to serve. The trial court gave the defendant the option to proceed with the trial to 11 jurors, but his counsel took the position that he could not make such waiver of his rights. Thereupon, the trial court entered of record a finding that the trial had been interrupted by catastrophe and accident, and discharged the jury on that ground, and ordered the impaneling of a new jury. The proceeding seems to have been in strict accord with the statute, and defendant's motion was properly overruled.

2. CRIMINAL LAW: former jeopardy: discharge of jury for sickness.

III.  Langland testified as a witness upon the trial. He was not a witness before the grand jury. Objections to him as a witness were made upon that ground, and because no proper notice of his testimony had been served. The grounds thus urged are not sustained by the record. Proper notice of the proposed evidence of this witness was served.

IV.  Some complaint is directed to the instructions given by the trial court. But it does not appear from the record that any exceptions were taken to any instruction within the time provided by statute.

V.  A police officer was examined as a witness by the State, and his attention directed to the keys described in the indictment. He was asked to state what they could be used for. This question was objected to as leading, and the objection was overruled. The witness testified, in substance, that they were adapted to burglarious use in the opening of locks. Complaint is now made of this ruling. The ground of objection to the question was that it was leading. It was not leading. No other objection was made.

3. WITNESSES: examination: non-leading question.

VI.  The more important question in the case pertains to the sufficiency of the evidence to support the conviction. The general grounds of objection to the sufficiency of the evidence are: (1) That the State did not prove that the burglar tools were in the possession of the defendant; (2) that it did not prove that such possession was guilty or felonious.

The emphasis of the first ground of objection is that the keys were not found upon the person of the defendant. It was undoubtedly incumbent upon the State to show, as the first element of the crime charged, that the defendant was in possession, in a legal sense, of such tools. The statute does not require that they be found upon his person. In a legal sense, a person may be in possession of personal property without having the same upon his person. It is sufficient that it be within his dominion and subject to his control. This is the nature of the possession exercised by owners over the great body of personal property.

4. BURGLARY: fact of possession.

It is undoubtedly true, also, that the State must show, as the second element of the crime, that the possession was guilty and felonious: that is to say, that it was with intent to commit the crime of burglary.

Upon the trial, the State introduced evidence tending to show defendant's possession of the burglarious tools in question. It thereupon rested, without introducing independent evidence of the burglarious intent of the defendant. The reason for this course will hereinafter appear. We proceed, then, to consider the first question: Did the State introduce sufficient evidence to show possession in a legal sense, disregarding for the moment the question of the guilty or felonious character of the possession?

As already stated, the search and discovery by officers was made on March 21, 1918. These tools were found in a little house which was the home of the defendant at the time of their discovery. This house had been rented from the owner's agent by this defendant personally, and the rent therefor had been paid by him. He and his codefendant, Benton, had occupied the same for at least two months prior to the time of the search. This house is known in the record as No. 1016 Third Street, and was located near the Northwestern depot at Ames. No occupation is disclosed for either of such defendants. They were both living in this house up to and including the date of the search, though this defendant was not present in the house when the search warrant was served, about 10 o'clock at night. At that time, Benton was in the house alone. The house thus occupied was a small frame building, about 16 feet wide and 18 or 20 feet long. It had three rooms on the first floor and two rooms

on the second floor and two rooms in the basement. The base-
ment rooms were separated by a partition wall of hollow tile.
The floor of the basement was of cement. The entrance into it
was by an inside stairway into its east room. There was no
outside stairway. This basement was in actual use by defend-
ant as a place of storage. An inspection of the basement on
the night of the search disclosed an interference with the sur-
faces of the cement floor and of the partition wall. A section of
the cement floor had been so cut as to make it removable, and
a hole was dug thereunder and the removable section restored
to its place. A quantity of meat was found therein. In the par-
tition wall was a disconnected tile. This being removed, a piece
of newspaper was disclosed, protruding out of the adjoining
tile. This proved to be a package comprising 12 keys wrapped
in a newspaper. These are the keys which are described in
the indictment. They consisted of keys and blanks in miscel-
laneous forms, and appear to have been made from spoons and
knives.

As to the defendant's use of this basement, the witness
Gretten, ex-sheriff, testified to a conversation with the defend-
ant on the night of his arrest, as follows:

"A. I asked him about a hole he had dug in the basement,
and he said he had dug a hole to keep his meat in. Q. What
else was said? A. There were two rooms in the basement, and
he had a big jar of lard which I found in one room, and in the
other was this hole dug in the basement. The cement part had
been taken up, or a hole dug under there, and then this piece
of cement laid back in there. He said he dug that hole to keep
his meat in. He called it his ice box. Q. Did he say anything
about the other room to the east? A. He said he had been
keeping it in there. He had some meat hanging up there, but he
said he had to have a cooler place for it."

Inasmuch, therefore, as this property was found in the de-
fendant's dwelling, actually occupied by him, and found in a
part of such dwelling actually used by him, we think this was
sufficient prima-facie proof of possession, in a legal sense. It
was, in fact and in law, within his dominion and control, and
was, presumptively at least, in his possession. This is not
saying that his possession was guilty or felonious. That feature

will be dealt with in the next paragraph. We only say here that this was sufficient presumptive evidence of defendant's possession to go to the jury. True, it was subject to denial or explanation by the defendant. Its credibility and weight could be put to test. But this would not affect its character as *prima facie* sufficient. And this is the argument that is made against this proof. It is said that some previous tenant of this house may have left the keys there; that Benton may have put them there; that, in any event, the defendant may have known nothing about them. True enough. The defendant had a right to testify in denial of any knowledge of the presence of the keys in his dwelling. This evidence, if believed by the jury, would rebut the prima-facie evidence of possession. There was no such denial; nor was there any evidence of any kind tending to explain the presence of these tools as not being in the possession of the defendant, though found in his dwelling.

We hold, therefore, that, upon the mere question of naked possession, whether innocent or guilty in character, the finding of this personal property in the dwelling occupied by the defendant, and in a part thereof actually used by him, is presumptive evidence of his possession.

VII. Proceeding to the second question: Was the naked possession discussed in the foregoing paragraph a guilty one? Before the jury could render a verdict of guilty, it must find that such possession on the part of the defendant was with intent on his part to commit the crime of burglary. Was such a finding justified, upon the record here? First of all, it is to be noted that the statute in express terms provides "that the possession of such tools or implements shall be presumptive evidence of his intent to commit burglary." The question of intent was of the very essence of the question of guilt. The prosecution did not rely upon the statutory presumption alone.

5. CRIMINAL LAW: course and conduct of trial: estoppel to deny guilty intent.

Intent may be established by circumstances. For instance, suppose that the State had produced many articles found in the defendant's possession in the same dwelling, and had proved that the same were the fruits of recent burglaries. Doubtless it would not be claimed, in such a case, that the evidence in

6. BURGLARY: recent burglaries as evidence on intent.

such form would not be sufficient to sustain a verdict of guilty. But the State introduced no evidence of that character. It started in that direction, but was promptly checkmated by an admission entered of record by the defendant, which requires our consideration. After the jury had been impaneled, and the court was proceeding with the trial, the following proceedings were had. We quote from appellant's abstract.

"Defendant moves the court that there be excluded from the room the grips, the 15 guns, the pillows, number of tools, of clothing, the bed clothing, the canned goods, because the State is seeking in an irregular way of convicting the defendant by prejudice; because one Kappen is upon trial on this indictment, and the defendant, in open court and in the presence of the court and jury, asks to have the record show that whatever act this defendant himself committed, that the act charged in the indictment, if it was done at all, it was done designedly, and it was not accidental or unintentional or through inadvertence or mistake; and for that reason and for the reasons above stated, no kindred acts or crimes can be admitted in this case from the one charged in this indictment, with its three amendments.

"The State of Iowa resists the motion of the defendant to exclude from the court room the articles which the State proposes to introduce in evidence later, for the reason that, even though the defendant does admit that whatever act he performed or did was designedly and not by accident, yet, nevertheless, such admission does not go to the extent of saying that whatever act or acts were done by the defendant were done burglariously, it being the purpose of the State to show by the articles in the court room that the defendant has—

"The court: I think, Mr. Langland, if you wish to make a statement with regard to those matters, the jury should be excluded from the room. I will exclude the jury at this time.

"The State further resists the motion of defendant to exclude the articles from the court room: (1) That defendant's admission does not go to the extent of admitting that whatever crimes he did were done burglariously; and (2) that it is the purpose of the State to show, by the articles here in the court room, that the defendant has been guilty of a great many differ-

ent crimes of burglary, it being the purpose of the State to show these facts, not in an attempt to convict the defendant of these other burglaries, but for the sole and only purpose of showing that the particular tools and implements mentioned in the indictment and the amendments thereto were in the possession of the defendant with intent of committing the crime of burglary.''

The court sustained the defendant's motion. It is now said, in disparagement of the State's case, that there is no evidence that the defendant knew that the keys were where they were found; that there is no evidence that any stolen property was found, and no evidence that any of the property found was stolen. It devolves upon us, therefore, to construe this admission by the defendant, and to declare its effect as evidence in the case.

The alleged burglarious intent of the defendant might have been established by circumstances, and a wide range was open to the State for that purpose. It was open to the State to prove that the defendant had been guilty of recent burglaries. In proof of such burglaries, it had a right to show that the articles produced in court had been found in his possession, and that they were the fruits of recent burglaries. The State offered ''to show by the articles here in the court room that the defendant has been guilty of a great many different crimes of burglary.'' If, by the aid of such evidence, it were proved that the defendant had been guilty of recent burglaries, there could be no question of the sufficiency of the evidence to justify a conviction. But the trial court accepted the tendered admission of the defendant as covering that ground, and excluded the evidence in advance, by sustaining the defendant's motion. The argument upon the sufficiency of the evidence is based upon the insufficiency of such admission to cover the ground of the guilty intention. The record discloses that the defendant's admission was patterned upon our holding in State v. Strum, 184 Iowa 1165. Counsel for defendant made the admission of record, and presented his motion to exclude the articles, with our opinion in the Strum case before him. The ruling of the trial court was in strict obedience to our holding in that case. There is no material distinction to be found, as between the record in the case at bar and the record in the Strum case. The Strum case was

a prosecution for the crime of receiving stolen goods, knowing the same to have been stolen. For the purpose of showing knowledge, the State introduced evidence of other transactions, involving the purchase by the defendant Strum of other stolen property. For the purpose of preventing the introduction of that line of evidence, counsel for the defendant in that case had entered of record the following admission:

"Comes now the defendant in open court, in the presence of the court and jury, and states that whatever act he did with which he is charged, he did it designedly; that it was not accidental or unintentional or through inadvertence; and that whatever he did, he did knowingly."

Because of such admission, the defendant Strum objected to all evidence of other transactions offered for the purpose of showing knowledge and intent. Such evidence was, however, received by the lower court over such objections. On appeal by the defendant, we held here that such admission was effective to preclude any further evidence on the question of knowledge and intent. We held expressly that the ruling of the court amounted to a "forcing of testimony into the record which has no right to be there, except to show that the defendant did act intentionally, after he has solemnly admitted of record that this is so." Because of the admission of such evidence after the foregoing admission had been made, we reversed the case.

Precisely the same kind of an admission was entered of record in the case at bar, and it was entered for the same purpose as was that in the *Strum* case. Acting in obedience to our holding in the *Strum* case, the trial judge sustained the defendant's motion, and excluded the proposed evidence, and treated the proffered admission of the defendant as fully covering the purpose for which such proposed evidence was offered. No other course was possible to the trial judge, unless he had chosen to ignore our holding in such prior case. It is now urged that there is no proof that the proffered articles were stolen. How could there be such proof, when the State was precluded by the ruling of the court from offering any evidence at all of other transactions for the purpose of proving intent? It is also urged that it was not proved that the articles were found in this dwelling. It was not essential that they should have been found in the

dwelling. In order to put them in evidence, it would have been necessary for the State to show that they were the fruits of recent burglaries, and to connect the defendant with the possession somewhere. But the defendant anticipated all such evidence, and proceeded, by a motion in advance, to exclude all evidence pertaining to other crimes. We are not unmindful of the novelty of such practice. But it was exactly the course which we sustained in the *Strum* case, whereby we left the trial court without any latitude or discretion. It is proper criticism to say that the admission was an indefinite one and a hypothetical one, and was open, doubtless, to a varying construction. It did not admit the "act charged in the indictment." But it did admit the *intent*, in the event that the act charged were proved. The only act charged against the defendant, as distinguished from his intent, was that he had in his possession burglarious tools. If we are correct in our holding in the preceding paragraph that the possession of the tools was sufficiently proved, then the *intent* charged was confessed by the admission in the record. The admission thus offered declared its purpose to prevent the introduction by the State of other evidence of guilty knowledge, and the defendant entered his objection to such evidence by motion in advance. Though the State had been able to prove the discovery in the possession of the defendant of the fruits of a score of burglaries, it could not, under our holding in the *Strum* case, introduce a line of evidence on the subject. The defendant, through his counsel, availed himself of the privilege held out to him by our pronouncement in the *Strum* case, and he must take the consequences of a consistent application of the rule there announced. The defendant having made a broad hypothetical admission, pursuant to the *Strum* case, for the purpose of limiting the field of evidence on the part of the State, and for the purpose of preventing the State from introducing evidence of other transactions, as tending to prove knowledge and intent, such admission should fairly be construed as admitting all that such evidence would tend to prove. Where it is incumbent upon the State to prove an intent, evidence of other similar or related transactions is the most common form of such proof. We reversed the *Strum* case because evidence of intent *was introduced*, notwithstanding defendant's hypothetical admission. If we

should reverse this case on the ground that the State *failed* to introduce such evidence, we should put upon the State the doom of a perpetual predicament in its prosecutions. Such predicament would be not unlike that of Lincoln's ox, impaled upon a fence, "unable to gore in front or to kick behind."

Inasmuch, therefore, as the admission of the defendant was conclusive upon the State, and precluded the State from introducing any evidence pertaining to the articles which it produced in court, and as such was the very purpose of the admission, it follows that such admission was necessarily conclusive upon the defendant also, and precludes him from saying that his admission was less effective than the evidence would have been.

VIII. We deem it proper to say that we do not wish to be understood as re-affirming or approving our holding in the *Strum* case, 184 Iowa 1165, and in *State v. Vance*, 119 Iowa 685, preceding it, in so far as the same requires the State, in its prosecution, to accept the hypothetical admission of a defendant in lieu of evidence otherwise admissible. The majority of the court are not satisfied as to the soundness of such holding, and are •disposed to take this occasion to so declare. No admission should be deemed to control the sound discretion of the court to permit evidence otherwise admissible. Much less should a hypothetical admission have such effect. The effect of our holding in the cited cases was to permit the defendant, in effect, to control the State's method of proof by basing admission upon a mere hypothesis, without committing himself to a direct confession of guilt. Such holding did not, of course, impinge upon any right of the defendant herein, but gave to him an enlarged right, of which he availed himself. In expressing our disapproval of our former holding, we take nothing away from the defendant herein. He received the full benefit of our pronouncement in the *Strum* case, and we only hold him now to his own admission in the form in which he chose to make it.

7. CRIMINAL LAW: reception of evidence: admission controlling State's evidence.

It is our conclusion that the course adopted by the trial court was precisely that which was selected by the defendant through his counsel, and he has no just ground of complaint. The judgment below is, therefore,—*Affirmed*.

WEAVER, C. J., LADD, PRESTON, STEVENS, and ARTHUR, JJ., concur.

SALINGER, J. (dissenting). I. On the question whether certain testimony was rightly received over objection, it seems to me it is not material that objections made to other testimony were sustained. Surely, correct rulings excluding testimony do not cure erroneous rulings in receiving testimony. Among other things, the following testimony was admitted on part of the witness Kelso: He had stated that he had been a member of the police force in Ames for something like two years. Over objection that it was incompetent, irrelevant, and immaterial, he added that, during that time, he had had experience with tools used in the commission of the crime of burglary. After a question such as is about to be set forth had not been permitted to be answered, because it was leading in form, the witness was asked this:

"I will ask you whether or not those keys are such as are commonly used by people in legitimate ways."

Objection was made that this was leading, suggestive, incompetent, irrelevant, and immaterial, and because it invades the province of the jury, and is a conclusion. Objection being overruled under due exception, the witness answered: "In my judgment they are not." Defendant unsuccessfully moved to strike out this answer, on substantially the same grounds that were interposed to the question. The witness was next asked: "For what purpose are said keys, then, used?" Like objection was made, and this time sustained, on the expressed ground that the testimony was incompetent; that no foundation had been laid; and "that there is no showing he knows what they are used for, and the objection is sustained for that reason." The next inquiry of which I think complaint may justly be made was this:

"Examine these exhibits, and state whether or not you know what those tools are designed, adapted, and commonly used for."

Objections similar to the ones already set forth were made, and, under exception, overruled. But this time the answer was harmless. Then came the question asking the witness to state,

"What these tools are commonly used for?" Like objection was made, among others, that the witness is asked for a conclusion and opinion; that this invades the province of the jury, they being the ones to determine for what purpose they can be used. The witness answered: "They are used commonly for the purpose of burglarizing." The motion to strike this out for the same reasons was overruled. Then came another question, which was ruled out on the express ground that it was leading in form. It was then restated as follows: "State what these tools might be used for." Objection was made that this was leading, incompetent, irrelevant, and immaterial; that it asked for a conclusion and opinion, and invaded the province of the jury, "which were the ones to determine for what purpose they can be used." This was overruled, with the statement that "he may answer if he knows;" and the witness answered, "Burglarizing."

The witness Gretten said that, while acting as sheriff, he learned to know the tools and implements commonly used for burglaries and in the commission of burglaries. Over apt objection, including the one that this was not a question for expert evidence, but one for the jury, he was asked to say "what these exhibits are adapted, designed, and commonly used for." He answered, "Burglarizing."

Kelso was thus allowed to say that, in his judgment, the keys in question were not such as are commonly used by people in legitimate ways. He was allowed to say that these keys were tools "used commonly for the purpose of burglarizing." He was allowed to answer a question as to "what these tools might be used for," by answering, "Burglarizing." For some reason, while this was permitted as to Kelso, the witness Gretten was not allowed to say "what these exhibits might be used for." He was, however, permitted to say that the keys "were adapted, designed, and commonly used for burglarizing."

I cannot escape the conclusion that this testimony was improperly received. If it was matter of expert knowledge, it is my opinion the witnesses had not qualified themselves to speak. If, on the other hand, the matter inquired about was one of common knowledge, then it was not to be spoken to by an expert, no matter how well qualified generally; and it was for the jury

to answer for itself the questions that had been propounded to these witnesses.

### 1-a

It is suggested that no advantage can be taken of these rulings, because of lack of formal presentation on appeal. I am inclined to think the rules of presentation were sufficiently complied with. In the fifth assignment, it is said:

"Defendant complains that the court erred in allowing the witness Kelso to testify that the keys 'were such instruments and tools as were commonly used to commit the crime of burglary.'" (See pages 8, 9, 10, 11, and 12 of appellant's abstract.)

The witness Gretten was asked the same questions as to what these keys are commonly used for, and for what purpose they could be used. (See pages 21 to 23 of appellant's abstract.) In the argument upon these assignments, it is said:

"In allowing the expert evidence of the witness Kelso to testify that the keys were made from certain materials, and in further allowing said witness to testify that they were such instruments and tools as were commonly used to commit the crime of burglary, * * * * an examination of these questions, particularly with this witness Kelso, seems to counsel to be absolutely and unconditionally unfair and prejudicial, because it has invaded the province of the jury. The fact that a man has been on the police force and worn a star and a police helmet for a couple of years, who was before that a common day laborer, that he should have an expert knowledge way beyond the common observation and experience of men of real business affairs, such as we have in a country jury, we think is crowding the mourners a little too hard. * * * To say to us that he was qualified to say that these 'are tools which are commonly used by burglars' is absolutely wrong. * * * The jury could tell as well for what purpose these were adapted."

Concede that, if the rules of presentation are in no wise relaxed, it is probably true that this assignment technically does not, in specific words, cover all that is, in fact, erroneous. But be that as it may, we have frequently relaxed the strictness of the rules of presentation in aid of liberty, and I can see no good

reason why an exception should be made in this case. We have so waived in *State v. Walters,* 178 Iowa 1108, and in *State v. McAninch,* 172 Iowa 96, at 99.

II. The majority holds that finding of burglar's tools hidden in a tile at the top of a kitchen wall in a large basement which has two rooms raises a presumption which sends to the jury the question whether these tools were in the possession of one who is a tenant and the successor of other tenants, and where others were in possession of the building with him, and had present opportunity so to hide the tools where they were hidden. If that be sound, then the same presumption must exist, and send the question of guilty possession to the jury, where two men rent a farm, and burglar's tools are later found buried under the soil of the farm. It is no answer to say that the finding of liquor in possession of defendant raises a presumption that he kept same for an unlawful purpose. That is, to begin with, a statute provision. In the next place, the statute presumption arises when the liquors *are found in possession,* and the statute does not say what constitutes such possession. In other words, whatever may be the rule where such tools *are found in the possession* of a party, that does not settle that finding these tools in this hollow tile constitutes finding them in possession of this tenant.

Nor is it an answer that a presumption of guilt arises from recent possession of stolen property. The rule creating such presumption also fails to define what is possession and presupposes possession; and, as there is no way of telling from the evidence when these keys were placed in the tile, therefore there is no evidence that, if there was possession, it began soon after the offense charged was committed.

Nor is it an answer to say that, if defendant be not convicted because others had access and opportunity to hide these keys where they were hidden, it could well happen that neither he nor any other person could be convicted, and that the law might fall between the two stools. No law demands that *somebody* must be punished; and it is quite in the contemplation of the law that sometimes the rules of evidence which are best for the greatest number do work that a guilty person goes without

punishment. No matter if all and any concerned escape pun-
ishment, that should not abrogate the salutary rule that, where
the evidence is in equipoise, the defendant must prevail, even in
a civil suit. If one claiming to be an administrator brought suit
for conversion, and his right to sue were challenged on the
ground that he was not an administrator, and the evidence
pointed as much to another as it did to plaintiff as being ad-
ministrator, the plaintiff would be defeated, although the same
argument would defeat the other claimant to the administrator-
ship. The fact that a jury cannot say from the evidence which
of two is guilty is no justification for convicting the defendant
before it, but is a reason for acquitting him.

III. In the trial of this case, defendant attempted to fol-
low and rely upon *State v. Strum,* 184 Iowa 1165, 1172, and he
was given the benefit of the rule in the *Strum* case. The State
has not appealed. Therefore, it is purely gratuitous, the writing
of a dictum, and going out of the road of what is here for de-
cision, to overrule the *Strum* case before the ink in its report is
fairly dry. And it is as much error and a gratuitous dictum to
overrule *State v. Lewis,* 139 Iowa 405, at 408, which has stood
unchallenged for long years, and upon which the *Strum* case
is based. Aside from these considerations, the merits demand
that neither the *Strum* case nor the *Lewis* case should be over-
ruled. The *Strum* case clearly fixes its own limitations by its
analysis of *State v. Stansberry,* 182 Iowa 908. And as thus lim-
ited, it merely declares that, where the charge is receiving stolen
goods knowingly, and the defendant states in open court that
all he denies is that he ever bought, and that, if the jury finds
he has bought, he admits the buying was with guilty intent, that
then it is error to permit the State to show that defendant made
other purchases of like goods. It was confessed in the *Strum*
case that such evidence is admissible for nothing except to show
guilty knowledge. And it was thereupon held that there could
be no legitimate reason for forcing such evidence upon the con-
sideration of an untrained jury, when its only proper purpose
was to prove what was confessed. It is now said that there
should be a discretion as to whether such testimony of other
purchases should be received. Why? For whom and for what
should such discretion be permitted? For use by just one kind

of lawyer. The sort of lawyer that would put in evidence of other purchases on the pretense that it was done to prove intent, although he knew intent was confessed, the purpose being, in fact, the hope that the jury would treat this evidence, not as mere evidence of intent, but as tending to prove that the particular purchase charged in the indictment had been made. Decisions of this court which leave to the State every legitimate right it has should not be overruled to give pettifoggers a chance to which they are not entitled,—a chance to take away liberty wrongfully because juries reason as juries do.