STATE OF IOWA, Appellee, v. JAMES DAVIS, Appellant.

**HOMICIDE:** Accessory—Competency of Testimony. On an indictment
1  for the murder of a police officer, the element of "aiding and abetting" may be shown by testimony tending to establish that the parties in question:

    (1)   Were police characters;

    (2)   Were heavily armed;

    (3)   Were together immediately prior to and at the time of the shooting;

    (4)   Knew the police officers;

    (5)   Knew that the police were seeking to effect their arrest; and

    (6)   Were apparently working with an understanding jointly to resist such arrest.

**CRIMINAL LAW:** Instructions in re Aiding and Abetting. Instruc-
2  tions reviewed, and held all-sufficient in stating the circumstances under which defendant would, and those under which he would not, be an accessory before the fact.

**CRIMINAL LAW:** Continuance—Absence of Counsel. Denial of a con-
3  tinuance on the ground of absence of counsel will not constitute reversible error when the absent counsel appears during the trial and the defendant is otherwise defended by able counsel who is familiar with the case.

*Appeal from Monona District Court.*—GEORGE JEPSON, Judge.

JUNE 21, 1921.

DEFENDANT was indicted by the grand jury of Woodbury County for murder in the first degree. A change of venue was taken to Monona County, and upon trial he was found guilty by the jury of murder in the second degree. He was sentenced to imprisonment for life, and appeals.—*Affirmed.*

*E. G. Smith* and *D. G. Mullan,* for appellant.

*Ben J. Gibson,* Attorney General, *B. J. Flick,* Assistant Attorney General, *O. T. Naglestad,* and *J. A. Prichard,* for appellee.

PRESTON, J.—1. In the early morning of July 22, 1919, Policemen Britton, Farley, Haggerty, and Shannon went to the car barn restaurant in Sioux City, to arrest this defendant,

1. HOMICIDE: accessory: competency of testimony.

"Red" Burzett, and "Tex" Maynard. Upon entering the place, the officers commanded, "hands up," and immediately the three, or some of them, began shooting at the officers, who returned the fire, and the room became filled with smoke. All the shots were fired in a very short time. One witness says that it continued not more than 10 seconds, all of it. Burzett, in the course of the shooting, fell to the floor, and Maynard fell off the stool. Davis was still sitting on the stool, but said he was shot. Officer Farley took from Davis the gun that was inside his shirt. Officer Britton was killed, and defendant was charged with his murder. Burzett was fatally wounded, and died without regaining consciousness. Maynard was shot several times, and is now under sentence to the penitentiary. Defendant Davis was also wounded at least twice. The defendant and the other two, among them, had four pistols. They were not all of the same caliber. Four shots took effect in the body of Britton, two of them going through his hand. The other two bullets were extracted from his body and used in evidence. These two were .38-caliber. The evidence tends to show that the shooting began instantly after the command to put up their hands. Two witnesses testify that this defendant fired the first two shots.

These witnesses so testify, and it is not denied, but defendant introduced impeaching testimony as to contradictory statements by them. Notwithstanding their impeachment, the weight of their testimony was for the jury. *State v. Carpenter*, 124 Iowa 5.

The defendant did not testify as a witness. Maynard testifies that he has gone under a good many different names; that he did not fire any shots. If this is true, then the shooting at the officers was by Burzett or by this defendant, or by both. Because of the smoke and confusion and the size of the guns, it is not claimed by the State that it has definitely shown that defendant actually fired the shot or shots which killed Britton. Its claim is that this defendant was an accessory, present, aiding and abetting the others. The evidence shows that there were four guns, either taken from the persons or picked up from the floor, which were claimed to be the property of Davis, Maynard, or Burzett. The evidence tends to show that Burzett fired three shots at Britton from a .38-caliber Colt's revolver. After the shooting, a .38 Colt's revolver, fully loaded, was taken from the person of defendant by the officers. A .32-20 gun was picked up, in which were two exploded shells. The other two guns were found to be fully loaded, after the shooting. Considering the number of shots fired at the officers, it is apparent that some of the four guns, probably all the .38's, were reloaded; or the guns could have been exchanged by the three, or some of them, to shield themselves from conviction. In the smoke and confusion, this could have been readily done. The defendant may have thrown the .32-20 on the floor and picked up a .38, or taken it from the others, or he may have had a .38 and the .32-20. It is not very material in this case who actually fired the shot or shots that killed Britton, if this defendant was an accessory, aiding and abetting the person or persons who did fire the fatal shots. Davis and his two associates were police characters. Davis had been acquainted with Officer Britton several years, and knew he was an officer. According to the record, Davis knew, at the time of the shooting, that he was being sought by the police, and was personally acquainted with Farley also. Farley was another member of the police force, and with Britton at the time of the attempted arrest.

The police testify that, on the morning of the shooting, information was conveyed to them in reference to the presence of Burzett and his gang in the city; that Burzett and his associates knew that the police department was looking for them; that Siglin, who was a member of the Burzett gang, had been arrested, about 1 o'clock that morning, some hours before the shooting; that the officers were looking for the others, Davis, Maynard, Burzett, Convey, and McLain; that Mr. Shannon, the police captain, called one of the police and said that Davis and two others had just been to Mandel's garage, and that they were going to the street car barn for breakfast; that the four then went to the restaurant. The shooting occurred about 5:30 o'clock in the morning.

It appears from the evidence that, between 1 and 2 o'clock in the morning, and, as we understand it, after Siglin had been arrested, the defendant Davis called a taxi, and was driven by witness Cabeny to Seventh Street, on the east side, where Davis left the taxi, which returned to the city; that, in 10 or 15 minutes, there was a call from the place on Seventh Street where Cabeny had left Davis, and, on the return of the taxi there, Davis, Maynard, and Burzett entered the taxi, and were driven back to the west side, and stopped at Mandel's garage; that this was between 3 and 4 o'clock. At that time there was a shotgun in the party, and the witness thought they had a grip with them. The taxi was driven away from Mandel's, and in a few minutes, Maynard, Davis, and Burzett drove back to the garage in a Ford touring car, Davis driving the machine. At that time, McLeod was at the Mandel garage, and the 3 men had 4 guns. One of them carried two, but witness did not know which one. The guns were shoved down in the trousers, and the handles in plain view. Tex Maynard carried a shotgun over his shoulder. They bought one tube, a casing, gasoline, and oil; paid for them, and drove away.

"In 10 or 15 minutes they came back again, and said one of their bearings was burned out, and wanted to know if we had any to sell. They wanted to buy a wheel. Just then, they spied a truck across the street, and went over and took a wheel off that truck. Burzett took it off. One put it on, and the other stood guard. The truck belonged to Willard Storage Company.

Davis or the other men did not offer to pay for the wheel that they took off that car. We put the wheel on their car peaceably; we saw that the men were well armed, and did not want any disturbance around the garage. An ambulance drove by, and one of the men said they would be riding in it some day, and Burzett said, 'If they ever get me, they are going to get me on the run.' That was the last time they were at the garage. It was five o'clock. Heard one of them say they were going to the car barn to get something to eat. Davis drove the car when they left. As soon as they were out of sight, I jumped into my car and drove to the police station and notified my father, who is on the police force, and he called captain of police, Shannon.''

Without going into further detail, such is the general situation, as the jury could have found from the evidence. It is said by appellant that there is no evidence to show that this defendant aided or abetted the other two men, or either of them, and that, therefore, the verdict is not sustained by the evidence; but we think the evidence is abundant. The association of the defendant with the other two for three or four hours immediately preceding the shooting, and leading up to the shooting, is shown, and the circumstances at the time of the shooting show, and the jury could have so found, that the defendant was aiding and abetting the others. We have three or more desperate men, heavily armed, of whom the defendant was one. As the officers put it, they were members of the ''Red'' Burzett gang. They knew that the police were on the lookout for them to arrest them. They knew, or at least defendant Davis knew, Britton and one of the other policemen personally, and knew that they were officers. When the police appeared in the restaurant, the three men were evidently determined to resist arrest, and to take the life of the officers if it was necessary. The jury could have found from the evidence that this defendant was the first to shoot at the officers, and that he did so, as one of the witnesses put it, as soon as the words were out of the officer's mouth, commanding them to put up their hands. The other two, or at least one of them, began shooting, and in a few seconds it was all over, and one of the officers was dead. If this is not enough to show that the defendant incited, encouraged, or assisted, supported, aided, and abetted the person or persons

who actually fired the shot, then it seems to us it would be difficult to prove in any case that one was an aider and abettor.

"The words 'aid' and 'abet' * * * comprehend all assistance rendered by acts or words of encouragement or support, or presence, actual or constructive, to render assistance, should it become necessary. * * * Not only actual assistance, the supplementing of another's efforts, but also presence, for the purpose of such actual assistance as the circumstances may demand or admit of, and the incitement and encouragement which the fact of such presence for such purposes naturally imparts or implies." 2 Corpus Juris 1023, Note 11.

The case is stronger in its facts than *State v. Reasby*, 100 Iowa 231, 236; *State v. Dunn*, 116 Iowa 219, 226; *State v. Gorman*, 168 Iowa 216, 219; *State v. Gray*, 116 Iowa 231, 234.

2. Complaint is made of Instruction No. 9, on the question of aiding and abetting. Counsel select parts only of the instruction. The part which they complain of and quote is as follows:

2. CRIMINAL LAW: instructions *in re* aiding and abetting.

"It is not necessary for the State to prove that the defendant, James Davis, actually fired the shot that caused the death of James G. Britton; but it is sufficient if the State has proved beyond a reasonable doubt that the defendant, James Davis, was present, aiding and abetting another, or others, in doing the act. * * * It is not necessary that the proof should show that he actually shot, or assisted in shooting, James G. Britton, or that he knew that 'Red' Burzett was about to fire the fatal shot."

The complaint lodged against the language quoted is that the court eliminates from the consideration of the jury, on the issue of aiding and abetting, any question of shooting on the part of defendant, Davis, their attention being directed, in both instances, to the fact that it is unnecessary for the jury to find, in order to convict, that Davis fired any shot, or that he knew that Burzett was about to fire a shot; and that the court directs the jury in a negative manner as to what it is unnecessary to find, in order to convict the defendant, but in no instance does the court cite to the jury facts which were in evidence which would justify the jury in finding defendant guilty as an aider and abettor. As to the court's stating the facts, it is not always

necessary to do that. Indeed, some of the cases hold that it is dangerous and improper to do so; but in other cases, it may be proper. But the instruction must be all taken together, not in segregated sentences, and when this is done, we think the objection made is covered by other parts of the instruction, and that the objection was not well taken. Taking the instruction altogether, the jury could not have been misled. The language of the instruction at one or two points is not happily chosen, perhaps. The part quoted by appellant is found in the instruction beginning after a clause or paragraph stating the statutory definition of accessory; and the quotation then takes a part from the body of the instruction, omitting even the last part of a sentence, then selects a part of another sentence. The instruction in full is as follows:

"You are instructed that the law in this state provides that all persons concerned in the commission of a public offense, whether they directly commit the act constituting the offense or aided and abetted in its commission, must be indicted, tried, and punished as principals. So in this case *it is not necessary for the State to prove that the defendant, James Davis, actually fired the shot that caused the death of James G. Britton; but it is sufficient if the State has proved beyond a reasonable doubt that the defendant, James Davis, was present, aiding and abetting another, or others, in doing the act,* and thereby concerned in the commission thereof. To aid and abet, as used in this paragraph of this charge, is meant to assent to an act; to lend to it countenance and approval, either by an active participation in it or by in some manner advising or encouraging it. To constitute the defendant, James Davis, an aider and abettor, *it is not necessary that the proof should show that he actually shot or assisted in shooting James Britton, or that he knew that 'Red' Burzett was about to fire the fatal shot* (if you find that 'Red' Burzett did so fire the same); but it is sufficient if it be proved beyond a reasonable doubt that they were acting together in an unlawful assault upon the deceased, James G. Britton; but, if there was no connection between the acts of the defendant, James Davis, and the acts of 'Red' Burzett as to the said shooting, or if the assault made upon the said James G. Britton, if any, was not jointly done or participated in or coun-

tenanced by the defendant, James Davis, but both were acting independently of and unconnected with each other, then the defendant, James Davis, was not an aider and abettor, and it will be for you to say, from all the evidence and all of the facts and circumstances shown upon the trial, whether the State has proved to you, beyond a reasonable doubt, that the said James Davis committed the act, or was aiding and abetting others in the commission thereof."

The words in italic are the portions of the instruction which the defendant has quoted. So that the court quotes the statute to the effect that one aiding and abetting the commission of a public offense must be tried as a principal. At another place, it is stated that:

"It is sufficient if the State has proved beyond a reasonable doubt that the defendant was present, aiding and abetting another or others in doing the act, and thereby concerned in the commission thereof. * * *" And again: "It is sufficient if it be proved beyond a reasonable doubt that they were acting together in an unlawful assault upon the deceased. * * *" And again, that it is for the jury to say from the evidence, and all the facts and circumstances shown upon the trial, whether the State has proved, beyond a reasonable doubt, that the said Davis committed the act, or was aiding and abetting others in the commission thereof.

It seems to us that the only objectionable part, in so far as any objection is now made by appellant, is the use of the word "assisted," near the end of the part quoted by appellant. Standing by itself, that might be objectionable; but when it is taken in connection with the other language, it is clear that the court meant—and the jury so understood it—that it was not necessary that defendant should have actually fired the shot, or actively assisted in firing that particular shot, but that, if they were acting together, in an unlawful assault upon the deceased, etc., it would be sufficient. No cases are cited by appellant, except that it is thought that the trial court bottomed the instruction upon *State v. Maloy,* 44 Iowa 104. Appellant seeks to distinguish the instant case, in that, in the case cited, the court does set out the facts which, if the jury found them established, would show an aiding and abetting. Appellee cites at this point *State v.*

*Gray*, supra; *State v. Penney*, 113 Iowa 691; *State v. Jackson*, 103 Iowa 702; *State v. Mower*, 68 Iowa 61. The same cases are cited by appellee, as sustaining their proposition that the verdict is sustained by the evidence. We are clearly of opinion that there is nothing in the instruction prejudicial to the defendant.

3. Finally, it is thought that the court erred in overruling defendant's application for continuance from the January to the March term. The motion was based on the absence of one of defendant's attorneys, who went to Chicago soon before the trial was to begin, expecting to return in time for the trial. He was prevented from returning for the commencement, but did return during the trial. The case had been tried before, in which trial both attorneys for defendant had participated. It is not a case where a defendant was compelled to secure new counsel, without preparation. He was defended by counsel of experience and ability, who, having participated in the former trial, was familiar with the case; and the record before us bears evidence that defendant's case was well presented. The matter was within the discretion of the trial court, and we think the discretion was not abused. *State v. Pell*, 140 Iowa 655, 663; *State v. Wilson*, 124 Iowa 264; *State v. Burns*, 124 Iowa 207.

*3. CRIMINAL LAW: continuance: absence of counsel.*

No prejudicial error appearing, the judgment is—*Affirmed.*

EVANS, C. J., WEAVER and DE GRAFF, JJ., concur.