STATE OF IOWA, Appellee, v. PETER ARHONTIS, Appellant.

**CRIMINAL LAW:** Accomplices—Partial Corroboration. Principle re-affirmed that it is not necessary for an accomplice to be corrobo-rated as to *every* matter testified to by him.

*Appeal from Woodbury District Court.*—O. A. WAKEFIELD, Judge.

JUNE 22, 1923.

THE opinion sufficiently states the case.—*Affirmed.*

*T. P. Cleary* and *C. R. Jones,* for appellant.

*Ben J. Gibson,* Attorney-general, *Maxwell A. O'Brien,* Assistant Attorney-general, and *O. T. Naglestad,* County Attorney, for appellee.

WEAVER, J.—The appellant, Peter Arhontis, and one McKay and one Green were jointly indicted on the charge of arson, it being alleged that these named persons did unlawfully, willfully, and maliciously set fire in the daytime to a certain inhabited building in Sioux City, used as a dwelling house, said building being owned by one Catherine Snyder. To this indict-ment the defendant entered a plea of not guilty, and was granted a separate trial, and was found guilty as charged. In support of the indictment, the State called as a witness appellant's co-defendant Green, who testified to being acquainted with his several codefendants. He further testified that McKay was carrying $800 in fire insurance upon household goods and furni-ture in said house, and that, a short time before the fire herein-

after mentioned, said insurance was increased to $1,400. Thereafter, on September 9, 1922, the building and contents were destroyed by fire. Prior to the fire, according to his story, defendant, together with Green and McKay, made experiments with ether and celluloid, and on the Sunday before the fire, the defendants met at a restaurant operated by McKay. They went to the room occupied by Green, where defendant made a celluloid container, funnel shaped, and sealed it with wax. Green had purchased a can of ether; and after this container was made, the three men drove out into the country, taking the ether and container with them. They went back on a lane from the main road, and there experimented with these materials, pouring the ether into the container and lighting it. After these experiments, the three men returned to town. A boy witness was produced by the State, who testified to seeing three men leave the car and go into the field, and that, soon thereafter, he saw a puff of smoke, and then the men came back to the car; but he was unable to recognize or identify the men of whom he spoke. According to Green, this experiment was repeated on Thursday following the Sunday above mentioned. During the week following, and before the fire, Green says he purchased ether with money furnished by McKay, and delivered it to the latter, and prepared containers for the mixture, McKay taking them with him to his pool hall. The fire occurred on the following Saturday, and on the next morning, appellant told Green that he had set the fire by tying a rag around the end of a stick and using it to touch off the ether, and that it caught very fast; and further said to the witness that he got out of the cellar window and went down through the brush, so that no one could see him. Appellant admitted that he slept in the same room with McKay, the night after the fire. When the fire was first discovered, a little smoke was coming from the house, and in a very short time, the whole house was in a blaze. There was other testimony by witnesses who were at the fire, and claimed to have detected the smell of ether. A number of local druggists gave evidence to the effect that Green purchased ether from them the week of the fire, and scraps of celluloid were found in the room which had been identified by Green. Officers visited the place where the alleged experiments had been made, and there found

an empty ether can, and the indications of there having been a small fire there. Soon after the house was destroyed, appellant talked with a witness who was employed at a drug store where some of the ether had been purchased, and at the time, said to the witness: "If you know anything, for God's sake keep still." Testifying in his own behalf, appellant denied much of the testimony referred to, and sought to establish an alibi to account for his whereabouts at the time of the fire. In argument to this court, appellant relies principally upon the proposition that the evidence was insufficient to sustain the verdict of guilty, and that the testimony of Green, who was an admitted accomplice in the alleged crime, was not supported by any corroborating testimony.

While the testimony of Green alone would not be sufficient to sustain a conviction, we think it cannot be said, as a matter of law, that the evidence given by the accomplice is wholly lacking in corroboration. The record fairly tends to show that the several defendants were closely associated at and before the time of the fire, and proof of the admissions and statements of the defendant was such as to justify the conclusion of his guilty connection with the commission of the offense. Where there is any evidence tending to corroborate the accomplice, the question of its sufficiency is for the jury. See *State v. Dorsey,* 154 Iowa 298, 300, where we said:

"It is not necessary that the corroboration be of every material fact. If it be such as to satisfy the jury that the witness spoke the truth in some material part of his testimony, in which he is confirmed by unimpeachable evidence, this is sufficient, if it leads to the conclusion that he also spoke the truth as to other matters for which there was no corroboration."

In the same connection, we said that corroborating testimony may be circumstantial, and that, whether direct or circumstantial, if it corroborates the testimony of an accomplice in any material part, and tends to connect the defendant with the offense, it is sufficient. The case now before us comes well within the scope of the rule thus recognized.

Counsel further urge upon our attention that the appellant did not own the house alleged to have been destroyed, nor have any interest in the insurance thereon, and therefore had no mo-

·tive to aid in the commission of the offense, if one was committed. It is true that there is no direct evidence establishing the motive for the crime charged against him; but it does not follow, as a matter of law, that he had no guilty connection with the offense. The crime, if one was committed, is no less a crime, whether the accused did or did not hope to gain or profit to himself, or whether he was actuated by the simple design to aid a codefendant in carrying out the criminal enterprise. All persons combining or conspiring together to commit a public offense are equally guilty, without reference to the question whether all of them take any active part in the overt act for which the conspiracy or combination was formed.

Exceptions were also preserved to the rulings of the trial court upon the admission of testimony, and to the instructions given the jury. An examination of the record upon the matters so referred to reveals no prejudicial error, and we find no sufficient reason for disturbing the judgment appealed from.

The judgment of the district court is, therefore,—*Affirmed.*

PRESTON, C. J., STEVENS and DE GRAFF, JJ., concur.