STATE OF IOWA, Appellee, v. JACK GASKILL, Appellant.

HOMICIDE: Murder—Evidence—Sufficiency. Evidence held ample to
1   support a verdict of murder in the first degree.

CRIMINAL LAW: Evidence—Accomplices—Corroboration. An accom-
2   plice need not be corroborated in *all* matters to which he testifies.

CRIMINAL LAW: Evidence—Materiality—Harmless Error. No preju-
3   dicial error results from receiving in evidence a lease entered into
    by the accused in a name other than his own, the accused having
    already admitted such fact.

Headnote 1: 30 C. J. p. 312. Headnote 2: 16 C. J. p. 704. Headnote
3: 17 C. J. p. 324.

*Appeal from Polk District Court.*—W. G. BONNER, Judge.

JUNE 25, 1925.

REHEARING DENIED OCTOBER 2, 1925.

THE defendant was convicted of murder in the first degree,

and his punishment fixed at imprisonment for life. From the judgment he appeals.—*Affirmed.*

*C. O. Holly* and *Ben J. Holly,* for appellant.

*Ben J. Gibson,* Attorney-general, *Neill Garrett,* Assistant Attorney-general, *Vernon R. Seeburger,* County Attorney, and *Clarence I. Spencer,* Assistant County Attorney, for appellee.

VERMILION, J.—The appellant and Cecil Mickle were jointly indicted for the murder of Thomas P. Griffin. They were separately tried. Mickle's conviction was affirmed by this court. *State v. Mickle,* 199 Iowa 704. While the evidence in the two cases was not in all respects identical, there was evidence in the instant case tending to show that the shooting of Griffin occurred under circumstances substantially as set out in the opinion in the *Mickle* case. In that case, however, the written confession of Mickle was in evidence, to the effect that he fired the fatal shot, and he testified on his own behalf in denial of the truthfulness of the statement in the confession. On the trial of this case, Mickle appeared as a witness for the State, and detailed the circumstances of the shooting substantially as he did in his own defense; and the admission in his written confession was used in impeachment of his testimony. With this explanation, it will not be necessary to here set out the circumstances of the crime, further than may be required for a consideration of the questions presented on the appeal.

It is the contention of the appellant (1) that the evidence is insufficient to sustain the verdict; (2) that there is no sufficient corroboration of the testimony of Mickle, an accomplice; and (3) that the court erred in admitting in evidence a certain lease signed by appellant in an assumed name.

I. It will be more convenient to consider the first two assignments of error together.

The testimony of Mickle was to the effect that he and appellant, at about 6:30 P. M., or a little later, on the evening of the shooting, November 15, 1923, left the residence of his mother

1. HOMICIDE: mur-
der: evidence:
sufficiency.

on Third Street in the city of Des Moines, to go into the Rock Island railroad yards, to see what merchandise they could find in the cars; that they each had an automatic gun, Mickle's being a .45, and appellant's of smaller caliber; that, when in the yards in the vicinity of Sixteenth Street, as a freight train was pulling out, he heard someone calling, wanting to know what they were doing down there; that they started to run, and he heard a shot; that he did not know who fired it; that appellant told him to come back, and he turned around, but did not go back; that, as he turned around, he saw firing that seemed to be north of him; that next he saw appellant coming from the north; that they went south along the track for a way; that he asked appellant if anyone was shot, and appellant said he thought so, and told him (Mickle) to keep still; that they went back to Mickle's place, and Mickle gave his gun to appellant, who said he would get rid of them; that Mickle went in the house a few minutes, and they then went to Betty Ruth's house on Ninth Street, and appellant made arrangements for them to sleep there, which they did; that, the next morning, they went back to Mickle's, and that appellant cleaned the guns there; that they remained there that day, and about 8 o'clock went to a restaurant, entering the back door and eating in the kitchen; and that that night they spent at Mickle's.

There was testimony from others that two men were seen in the vicinity of the shooting just before the shots were heard, and after the shooting, were seen running from the scene; but the witnesses were unable to identify them. It was then dark. There was abundant corroboration of Mickle's testimony as to the movements of himself and appellant from the time they reached Mickle's residence, after the shooting, until sometime later, and that, on the day following the shooting, Mickle was cleaning a small automatic pistol. Griffin was found dead immediately after the shooting. The testimony showed that two bullets fired from a .32-caliber automatic gun were found in his body and his clothing, and exploded shells of the same caliber were found on the ground near where the body lay. There was testimony from others than Mickle that, on the second night after the shooting, Mickle and appellant were talking about

running, and that someone shot at them; that, on another occasion, when those present were talking of the Griffin murder, appellant said he had been in a tight place, and had to shoot his way out. Jack Bass testified that, on the Sunday following the shooting, appellant asked him to go with him (appellant) to the east side and get a car; that he said he had a sale for it, and told the witness to bring a gun; that Bass said he did not need a gun, and appellant said, "You never can tell,—I had to use one the other night,—I had to plug a copper;" that later, when they were in jail, appellant wrote him two notes, in one of which he said he could beat the case if Bass did not testify against him, and in the other note there were questions and answers that Bass was to memorize and repeat as a witness in appellant's behalf. There was testimony from another witness that, while appellant and Bass were in jail in different cells, they were talking to each other through holes in the wall; that appellant would ask Bass questions, and furnish the answers; that the questions related to what Bass was to say on appellant's trial; and that they would repeat them seven or eight times a day. Bass was a boy 15 years old.

We have not referred to all of the circumstances the evidence tended to establish, but to sufficient of the testimony to show that there was ample evidence, if it was believed by the jury, to sustain the verdict. Much of the argument for appellant is devoted to criticisms of the methods used by the police in obtaining the testimony of various witnesses, particularly Mickle and Bass. They were repeatedly interrogated while in jail. Mickle was represented by an attorney, to whom he testified he first told his story, and who was present at the time his confession was signed. The mother of the Bass boy appears to have been present at some of the interviews with her son, and told him she wanted him to tell the truth, but did not want him scared into telling a lie. Mickle, at one time, in the presence of the jury, refused to testify, and later, when a witness, testified that he had talked with his attorney in the meantime. No complaint is made that full opportunity was not given appellant to present the facts in this connection to the jury. The instructions are not before us, and there is no contention that the court did not properly instruct upon the subject of what should be

taken into consideration in determining the credibility of the
witnesses. While we would not be understood as expressing
approval of all that it was claimed the officers did, they were
seeking to discover the facts from persons who were unwilling
at first to tell what they knew, but who on the trial testified
freely to what they claimed to be the facts. The credibility of
the witnesses and the reasonableness and consistency of their
stories were for the jury to determine, under all the facts. *State
v. Madden,* 170 Iowa 230; *State v. Huckelberry,* 195 Iowa 13.

Much is said in argument about the fact that witnesses for
the State who testified to seeing two men near, and running
away from, the scene of the killing said that they were about
the same size, and described their clothing; while the evidence
shows that appellant was shorter and lighter in weight than
Mickle, and it is claimed that he was not dressed as the men
were described. It was dark, the men observed were seen in
the light from an engine headlight, and at one time they were
running. The facts were fully before the jury; and this, like
other discrepancies and contradictions in the testimony, was a
matter for the jury's consideration and determination. We find
nothing in the record that requires us to interfere with the result
reached. *State v. Carson,* 185 Iowa 568; *State v. Hessenius,* 165
Iowa 415; *State v. King,* 198 Iowa 325.

There was sufficient corroboration of the accomplice Mickle.
The statute, Section 13901, Code of 1924, does not require cor-
roboration of the testimony of an accomplice at all points, but
2. CRIMINAL LAW:   the corroboration is sufficient if it is as to mate-
evidence: ac-   rial facts, and tends to connect the defendant
complices: cor-
roboration.      with the commission of the offense. *State v.
Seitz,* 194 Iowa 1057; *State v. Arhontis,* 196 Iowa 223.

II. The appellant testified, on direct examination, at con-
siderable length as to his previous life, his service in the army,
and his occupations. On cross-examination he testified, without
3. CRIMINAL LAW:   objection, that he had signed a lease of a build-
evidence: mate-   ing in another name than his own. The State,
riality: harmless
error.            over objections, was permitted to introduce the

lease·so signed. There was no prejudicial error in this; the fact had been admitted by the appellant.

The judgment is—*Affirmed*.

FAVILLE, C. J., and STEVENS and DE GRAFF, JJ., concur.