STATE OF IOWA, Appellee, v. ADOLPH LEITZKE, Appellant.

366

APRIL 3, 1928.

REHEARING DENIED JUNE 26, 1928.

*Robertson & Robertson,* for appellant.

*John Fletcher,* Attorney-general, *Neill Garrett,* Assistant Attorney-general, and *Frank E. Northrop,* County Attorney, for appellee.

KINDIG, J.—On October 1, 1926, Adolph Leitzke, the defendant-appellant, assisted by John and Ed Stewart, stole two shoats belonging to and on the farm of Frank Hadfield, near Neola. These men killed the animals, put them into a Ford

roadster, and hauled the carcasses to appellant's home, about three miles away, where the process of butchering was completed. Then, during the following day, the dressed hogs were offered to a Mr. Owens, at Neola, in payment of a garage bill. This tender was refused. Immediately thereafter, arrests were made. John Stewart pleaded guilty, and was sentenced to the reformatory at Anamosa, while Ed was not prosecuted.

There is an abundance of evidence to prove the theft. No question is raised concerning that, but the controversy is waged over the proposition as to whether or not the punishment should be for grand or petit larceny. Fifty assignments of error are made by appellant. However, we have carefully considered all of them, but think it necessary to discuss only six thereof.

I. At the outset, it is claimed that there must be a reversal of the district court's judgment because, during the opening statement of facts to the jury, appellant's counsel admitted for him "every charge in the indictment except the allegation concerning the value of the property." Notwithstanding this, it is asserted the State was allowed to prove, over objections, each and every detail of the offense. Reliance at this juncture is made upon the following decisions of this court: State v. Strum, 184 Iowa 1165, and State v. Vance, 119 Iowa 685. Involved in the Strum and Vance cases were situations where it was material to show that the act of the defendant was performed designedly and knowingly, as distinguished from accidentally or unintentionally, through inadvertence; so that the only purpose of proving other and different previous criminal acts of the defendant was to indicate the design and knowledge. Such prerequisite having been admitted by the defendant, it was said by us there that the subject-matter became immaterial, and its introduction thereafter could only result in unnecessary prejudice; while, in the case at bar, the testimony offered did not relate to dissimilar and different crimes, but was a mere recitation of the instances, happenings, and steps taken leading up to and completing the elements of the particular transgression for which appellant was being tried. It is plain to be seen that there is a fundamental distinction between this state of affairs and that concerned in the authorities cited.

Thus, when, as in this proceeding, the appellant, as de-

fendant, admitted certain truths constituting the factors of the "larceny," no harm could come to him because witnesses told the specific movements and actions embodied in the "admission," as well as other acts and circumstances adding to the proof of the .offense (*State v. Gaskill*, 200 Iowa 644) ; for, in making these declarations, the testifiers said no more than appellant himself has admitted. That is quite different from injecting into the record, for the purpose of showing "knowledge and design," the stories of many and various crimes of which. the defendant has not acknowledged the commission.

Moreover, the rule announced in *State v. Strum* and *State v. Vance*, supra, was expressly overruled by us in *State v. Kappen*, 191 Iowa 19. In the *Kappen* case it is said:

"We deem it proper to say that we do not wish to be understood as re-affirming or approving our holding in the *Strum* case, 184 Iowa 1165, and in *State v. Vance*, 119 Iowa 685, preceding it, in so far as the same requires the State, in its prosecution, to accept the hypothetical admission of a defendant in lieu of evidence otherwise admissible. * * * No admission should· be deemed to control the sound discretion of the court to permit evidence otherwise admissible. Much less should a hypothetical admission have such effect. The effect of our holding in the cited cases was to permit the defendant, in effect, to control the State's method of proof by basing admission upon a mere hypothesis, without committing himself to a direct confession of guilt. * * *"

Consistently, our language in *Henderson v. Ball*, 193 Iowa 812, is to the following effect:

"It is the contention of appellee that this allegation or admission [in reference to design and knowledge] has the effect to render immaterial and inadmissible any evidence to prove fraudulent intent. That there is one decision, and perhaps two, by this court in the past, affording some support for this argument, may be admitted; but those precedents have since been expressly disapproved and overruled. See *State v. Kappen*, 191 Iowa 19. A hypothetical admission of that nature will not preclude the other party from proving the wrongful intent in the usual manner by other competent testimony."

Some doubt appears as to whether or not the "admission" claimed by appellant was made into the record as such. Nevertheless, conceding that it was properly offered and recorded, we are of the opinion that appellant, by thus doing, cannot control the discretion of the trial court in the "admission" of evidence. *State v. Kappen* and *Henderson v. Ball*, supra. Throughout the trial, appellant was entitled to the benefits from the presumption of innocence, and it was at all times necessary for the State to prove him guilty beyond a reasonable doubt. His declarations and "admissions," of course, could be considered against him by the jury; but, until he pleaded guilty, there was due him the "presumption of innocence," and the burden remained upon the State to furnish the required "proof." Even though the court, in the exercise of its "discretion," may assume the truth of a fact fully admitted by both the State and the defendant (*State v. Graves*, 192 Iowa 623), yet the judicial "discretion" in that regard cannot be controlled by the accused. Otherwise, the State at times would be unduly handicapped in meeting the "burden of proof" cast upon it.

We find appellant was not prejudiced by the trial court's procedure.

II. Complaint is interposed concerning the method adopted by the State in placing a value upon the personalty taken. The materiality of this proposition is due to Section 13006 of the 1924 Code, which reads:

"When the value of the property stolen exceeds twenty dollars, he [the defendant] shall be punished by imprisonment in the penitentiary not more than five years, or in the county jail not more than one year, or by fine of not more than one thousand dollars, or by both such fine and imprisonment; when the value does not exceed twenty dollars, by fine not exceeding one hundred dollars, or imprisonment in the county jail not exceeding thirty days."

Appellant insists that the "value" is to be determined by the live-stock market at Omaha, Nebraska, on the day in question, while the State's witnesses based their opinions upon the  "market" at Neola. More specifically, the exact point made by appellant is that the alleged demand for hogs of this size at Neola was among

farmers or feeders only, and therefore a "market" did not arise. Four "witnesses" testified for the State concerning the "value." They were stockmen and feeders with long experience. According to their unqualified assertions, there was a "market" among farmers in Neola and vicinity for light hogs similar to those in controversy. Said "market," they steadfastly maintained, was ready and constant, and upon this the opinions were founded. Rather conclusively it seems to have been shown that the worth of the stolen chattels was the amount claimed by the State; for the criterion forming the standard urged by appellant relates rather to heavy and fat hogs, while those in controversy were small, not fit to be killed, but suitable for feeding purposes.

Sufficient support, at least, appeared in the record to warrant the jury in determining the conflict in favor of the State's contention.

III. Grievance is grounded upon the theory that the State improperly, and over appellant's objection, asked the "witness" John Stewart a question which compelled him to answer whether or not he was, at the time of the trial, in the men's reformatory, at Anamosa; because, it is said, in so doing the State revealed to the jury that the said Stewart was serving time under conviction for the same "larceny."

With this we do not agree. Impropriety does not arise through the propounding of an interrogatory for the object of ascertaining the residence of a "witness," even though the reply thereto discloses the fact that he is being imprisoned. *State v. Burris,* 198 Iowa 1156; *State v. Moran,* 131 Iowa 645. Furthermore, the inquiry did not embody the thought nor bring forth the information concerning the identity of the crime for which Stewart was serving time. Not because of any efforts of the State, but rather, due to appellant's own inquiry through cross-examination, that feature of the record was revealed to the jury. About this he has no right to complain.

IV. During the examination of the appellant, he alleged that the hogs were stolen for the purpose of paying an indebtedness to Mr. Owens; whereupon the county attorney, on cross-

examination, inquired as to why he did not deliver one of his own. Then, on redirect, appellant by his attorney was asked the following: "Could you have taken any of your hogs to Mr. Owens?" To this the court sustained the State's objection.

Explanation is further made, in order to lay the basis for the error in this regard, to the effect that appellant's animals were mortgaged, and therefore they could not be transferred by him to the said Owens in satisfaction of the indebtedness.

All this, however, was quite immaterial; for it constituted "larceny," nevertheless, for appellant to take Hadfield's "shoats," under the circumstances here revealed, regardless of the personal reasons prompting him to do so.

V. The witness Jim Sexton was called by the State, and it was objected by the appellant that this name did not appear upon the indictment, and that a sufficient notice was not served upon the defendant concerning the State's intention of introducing the testimony of such person. George C. or G. C., rather than "Jim," was the proper name. Yet it is shown that this man was known in Neola and surrounding territory as "Jim," instead of "George C." or "G. C." No other Jim Sexton lived in that town or community. He was a prominent stock buyer, living at Neola, and generally and familiarly called "Jim," because that was his father's name.

Mistake does not arise because the notice contained the incorrect residence or occupation of this "witness." Confusion or doubt did not appear concerning the man to which reference is made, and in no way was the appellant misled. *State v. Anderson*, 125 Iowa 501; *State v. Altomari*, 199 Iowa 43; *State v. Leeper*, 198 Iowa 83.

Consequently, he was not prejudiced thereby.

VI. Among the court's instructions to the jury was one about the importance of determining whether or not the "value" of the hogs exceeded $20. As a part of this paragraph, that tribunal said:

"The punishment provided by law for larceny is greater where the value of the property stolen exceeds $20 than it is where that value is $20 or less."

A reversal is thereupon predicated, under the doctrine announced in *State v. Tennant*, 204 Iowa 130, and cases therein cited. Rape was the crime charged in the *Tennant* case, and during the discussion we said:

"The included offense of assault with intent to commit rape, of which the defendant was convicted, was submitted to the jury. The penalty for this offense, which is subject to the indeterminate sentence law, is for a term of years not exceeding twenty; but this was not stated to the jury. * * * It is urged in defendant's behalf that the court committed error in stating to the jury the penalty as to rape [which is imprisonment in the penitentiary for life or any term of years not less than five], and particularly because of the failure to state the penalty provided for assault with intent to commit rape."

Because the minimum penalty for rape was five years, it was said in the *Tennant* case the jury would have a right to believe that the penalty for assault with intent to commit rape, being a lesser offense, was less, while in truth it was more. Repeatedly, this court has said that the jury should not be informed concerning the punishment that may be imposed upon the defendant. *State v. Tennant*, supra; *State v. Reid*, 200 Iowa 892; *State v. O'Meara*, 190 Iowa 613; *State v. Purcell*, 195 Iowa 272. Reversal resulted in the *Tennant* case because the fact-finding body may have been misled into thinking that the term of years for the lesser offense (assault with intent to commit rape) would be less than the minimum of the greater crime (rape). Had it not been for the possible (even though unintentional) deception, the conviction in the *Tennant* case undoubtedly would have been sustained, for we there declared:

"This court has repeatedly said that it is improper for the court, in its instructions to the jury, to refer to or state the penalty that may be inflicted upon the accused. * * * We have, however, always declined *to reverse upon this ground alone*. [The italics are ours.] Ordinarily, it could not be said that prejudice would be likely to result from a statement to the jury of the punishment provided for the crime."

Likewise, in *State v. Reid*, supra, we used this phraseology:

"We have said that, except where the jury is required by law to fix the punishment for one convicted, the court should not instruct as to the punishment provided by statute for the offense, but that to do so is not reversible error."

Also, we made a similar pronouncement in *State v. Purcell*, supra, to the following effect:

"In *State v. O'Meara*, 190 Iowa 613, we said: 'With the penalty to be imposed, the jury had no concern, and might not take the punishment to be inflicted into account, in passing on the issue as to the guilt or innocence of the accused. The duty of fixing the penalty, under law, devolved upon the court alone.' The trial court should in all criminal cases refrain from instructing the jury with regard to the punishment provided by statute for the crime with which a defendant is charged. The jury has no concern with the punishment which the law prescribes. Its function is to determine the fact question as to whether the defendant is guilty or not guilty. We do not reverse because of the giving of such an instruction, but it is a practice which trial courts should avoid."

Hence, in this case no prejudice resulted necessitating a reversal, although the trial courts should refrain from mentioning punishment to the jury when that body does not have the duty of fixing the extent thereof.

VII. Many other points are argued, relating to instructions and the admission of evidence; but, because of the position we have taken in the foregoing paragraphs of this opinion, it would serve no good purpose to extend the discussion.

The judgment of the district court should be, and hereby is, affirmed.—*Affirmed*.

STEVENS, C. J., and EVANS, FAVILLE, DE GRAFF, ALBERT, MORLING, and WAGNER, JJ., concur.