STATE OF IOWA, Appellee, v. PAT GRIFFIN, Appellant.

No. 42094.

MAY 15, 1934.

REHEARING DENIED JANUARY 10, 1935.

John L. McCartney, Herbert A. Greenhaus, and James W. Fay, for appellant.

Edward L. O'Connor, Attorney-general, Walter F. Maley, Assistant Attorney-general, and John W. Gwynne, County Attorney, and Burr C. Towne, Assistant County Attorney, for appellee.

KINDIG, J.—On December 16, 1932, Elmer Brewer shot and killed William F. Dilworth, a deputy sheriff of Black Hawk county. For this offense, Brewer was informed against, tried, and convicted of murder in the first degree, and sentenced to be hanged. See State v. Brewer, 218 Iowa 1287, 254 N. W. 834.

The crime was committed near the city of Waterloo. Pat Griffin, the defendant-appellant in the case at bar, accompanied, and it is claimed by the state aided and abetted, the said Elmer Brewer at the time of the murder. Section 12895 of the 1931 Code provides:

"The distinction between an accessory before the fact and a principal is abrogated, and all persons concerned in the commission

of a public offense, whether they directly commit the act constituting the offense, or aid and abet its commission, though not present, must hereafter be indicted, tried, and punished as principals."

Accordingly, the defendant, Pat Griffin, was informed against and tried for murder as a principal, but the state proved its charge against the defendant by showing that he knowingly aided and abetted the said Elmer Brewer in committing murder. A verdict of guilty was returned by the jury on January 5, 1933. It was found by that body that the defendant committed murder in the first degree, and that he should be punished "with death". Section 12914 of the 1931 Code. So, on January 16, 1933, the district court sentenced the defendant in accordance with the jury's verdict. From the judgment imposing the sentence, the defendant appeals.

Numerous propositions are argued on the appeal. Our attention now will be directed to them.

I. Throughout his argument, the defendant insists that the district court erred in permitting the jury to consider the issue of murder in the first degree. Such error appears, the defendant concludes, because there is no evidence of premeditation or deliberation. See section 12911 of the 1931 Code.

Assuming, without deciding, that, in order to convict the defendant of murder in the first degree, it is necessary for the state to prove that the act of Elmer Brewer in killing the deputy sheriff was willful, deliberate, and premeditated, and further conceding, without determining, that, in order for the state to prove the defendant in the case at bar guilty of murder in the first degree under the information and instructions, it is necessary to show that the aiding and abetting were with the willful, deliberate, and premeditated intent of assisting the said Elmer Brewer in committing murder, nevertheless a review of the record reveals that there is ample evidence to sustain the jury's finding, that the part played by each participant in the murder was willful, deliberate, and premeditated.

The jury was warranted in finding the following facts at this juncture: Elmer Brewer and the defendant, some days previous to the murder, while armed with revolvers, robbed the Hill Packing Company, at Topeka, Kansas, of approximately $125. After the robbery, Brewer and the defendant went to Kansas City, Missouri, in an automobile which they abandoned and left standing on the streets of that city. On the next day, Brewer and the defendant left

Kansas City and rode on a freight train to Chicago, where they remained for approximately two weeks. They then drove a car, with an Illinois license, from Chicago to Waterloo, where they arrived December 14, 1932.

Frank Graves and his wife lived in a two-room shack about a quarter of a mile south of highway No. 20, near the east limits of Waterloo. Brewer and the defendant spent some time at the Graves home. Pat Griffin, the defendant, stayed at the Graves home on the night of December 14th, but Brewer did not stay there. Both Brewer and the defendant remained at the Graves home on the night of the 15th. The defendant and Brewer ate breakfast at the Graves home Friday morning, December 16th. Following the breakfast, they went to Waterloo, but came back about 1 o'clock in the afternoon. Upon returning to the Graves home, Brewer and the defendant went into the house. Soon after going into the house, Brewer lay down on a cot, covered himself with his overcoat, and went to sleep. When Brewer went to sleep, the defendant watched for officers. He told Mrs. Graves that, if any one came and made inquiry about the automobile standing outside, she was to falsely tell the inquirer that it belonged to hunters. At that time, one D. E. McBride, an acquaintance of the Graves family, was in the house with Mrs. Graves, Brewer, and the defendant.

H. T. Wagner, the sheriff of Black Hawk county at that time, had a warrant for the arrest of Brewer on a "blanket charge". Accordingly, the sheriff sent two of his deputies to locate and interview Brewer, with the instructions that, if "they found anything worth while, they were to bring him in." The deputies thus sent for Brewer were Dilworth and Mitchell. So, at about 2 o'clock in the afternoon, the two deputy sheriffs got into a car and drove to the Graves home. As they were driving up the lane from highway No. 20, the defendant saw them and remarked: "It is the law." Then the defendant awoke Brewer, who was sleeping on the cot. Brewer threw his overcoat on the floor, and the revolver fell out of a pocket. He picked up the revolver and put it back into his overcoat pocket. Both Brewer and the defendant went into the bedroom of the house, and they, or Mrs. Graves, placed a beaver board door over the opening between the two rooms. About that time the officers came to the house and rapped at the door. They first asked for Mr. Graves. Mrs. Graves replied that he was "up town". At this time, the officers informed Mrs. Graves as to who they were. She invited

the officers into the house. During this conversation, the officers inquired about the car with the Illinois license, and Mrs. Graves, as she had been instructed, falsely told them that the automobile belonged to hunters; whereupon the officers asked if Brewer was in the house, and Mrs. Graves, as directed, falsely said "No".

One of the officers looked over at the beaver board door and asked Mrs. Graves if he could look into that room. When in the house, the officers had on their overcoats, which were buttoned up. As one of the officers started toward the beaver board door, Brewer and the defendant, with drawn revolvers, pushed the door aside, stepped into the room where the officers were, and said: "Stick 'em up." Immediately the officers obeyed, and put up their hands. At the very instant when Brewer and the defendant said "Stick 'em up" they commenced shooting at the officers. The defendant shot at Officer Dilworth, and the bullet struck the belt buckle at the officer's waist line, and then glanced off into the flesh. According to the record, this bullet would have been fatal had it not been for the belt buckle. Almost instantaneously with the defendant's shot, Brewer also fired at Officer Dilworth, and the bullet entered through his head and killed him. Then immediately afterward the defendant shot Officer Mitchell through the abdomen, but he later recovered from the wound thus inflicted.

Thereupon Brewer and the defendant left the Graves home and wandered through the fields for a considerable time until they were finally apprehended by other officers. Following the capture, Brewer and the defendant were taken to the county jail, where the defendant admitted that he and Brewer shot Officer Dilworth. When talking to the sheriff of Black Hawk county, the defendant was asked this question: "You fellows (defendant and Brewer) must have been wanted for something in order to do what you did this afternoon (shoot the officers)." To that interrogatory the defendant made the following answer: "Yes. That they (we) (meaning the defendant and Brewer) had been in Topeka, Kansas, and pulled a robbery there. They (we) had robbed the safe of the Hill Packing Company of $125, more or less, and figured when they (we) saw the officers coming at this time (up the lane toward the Graves home, just before the shooting) that they (we) (Brewer and the defendant) were going to be picked up for that robbery." On different occasions the defendant stated that he and Brewer intended to "beat the rap" for the Kansas crime. When the officers came up the lane toward

the Graves house, Brewer and the defendant thought they were after them for the Kansas crime.

Obviously under the record there is ample evidence upon which the jury could base its finding that the killing of Officer Dilworth was willful, deliberate, and premeditated. State v. Woodmansee, 212 Iowa 596, 233 N. W. 725; State v. Troy, 206 Iowa 859, 220 N. W. 95; State v. Kneeskern, 203 Iowa 929, 210 N. W. 465; State v. Browman, 191 Iowa 608, 182 N. W. 823; State v. Fuller, 125 Iowa 212, 100 N. W. 1114.

II. At least a part of the evidence relating to the robbery in Kansas was shown by the cross-examination of the defendant. This, he says, is reversible error because the subject was not sufficiently gone into on his direct examination to warrant a cross-examination of such extended scope. Moreover, the defendant admitted that he previously had been convicted of a felony, and therefore he argues that it was not proper to further defame his character by showing another crime.

Again it is argued by the defendant that it is not competent for the state to introduce evidence against him in this trial concerning another and unrelated offense. It is manifest that the defendant misconceives the purpose of the cross-examination. There is no doubt that the cross-examination of the defendant in regard to the Kansas crime, was for the purpose of showing willfulness, deliberation, and premeditation in the commission of the murder of Officer Dilworth. The defendant himself took the witness stand and testified that there was no cooperation or previous plan between himself and Brewer. Also the defendant testified that he did not intend to kill Dilworth, and that he did not know that Brewer intended to kill Dilworth. That being the testimony of the defendant on direct examination, it was perfectly proper for the state on cross-examination to weaken the direct testimony by showing that in fact there was unity of action between Brewer and the defendant and that the defendant and Brewer did willfully, deliberately, and with premeditation kill Dilworth. After the defendant had testified that there was no premeditation, willfulness, or deliberation and no concert of action between himself and Brewer, it was not necessary for the state to stand helplessly by and permit that testimony to remain unweakened. By the use of competent means, the state had a right to weaken, if it could, the testimony of the defendant in reference to matters to which he testified, although by so doing the

state proved other crimes committed by the defendant. State v. Friend, 210 Iowa 980, 230 N. W. 425; State v. Burzette, 208 Iowa 818, 222 N. W. 394; State v. O'Connell, 144 Iowa 559, 123 N. W. 201.

Concerning the question now under consideration, we stated in State v. Friend, supra, reading on page 991:

"But it is contended by the appellant that, if he attempted to bribe the jurors, he is guilty of a crime under section 13170 of the Code, and that the state is not permitted to introduce evidence of other crimes committed by the defendant. The fact that his statements or conduct, tending to implicate him in guilt in the instant case, make him guilty of another crime, is not sufficient reason to prevent the admission of such evidence. In State v. Burzette, supra, we declared:

" 'The contention is that this evidence served no material function in the case, and that its only effect was to permit the state to prove the commission of another crime. The evidence was not offered for the purpose of proving another crime. If the facts proved had a material bearing upon the issues in the case, they were admissible in evidence; and this would be true, regardless of whether they constituted a crime or not.'

"In State v. O'Connell, 144 Iowa 559, 123 N. W. 201, we said:

" 'If a circumstance is so related to or connected with the alleged crime under investigation as to be otherwise admissible, it is not rendered inadmissible because it tends to prove another crime.' We hold that the action of the court in permitting the cross-examination of the defendant as aforesaid, and in receiving the evidence of the juror Larson in rebuttal, was not improper."

So, in the case at bar, the evidence objected to is material, relevant, and competent, and the cross-examination of the defendant in relation thereto was not improper.

■■ III. The further objection is made that the district court erred in instructing the jury concerning deliberation and premeditation. Regarding deliberation and premeditation, the district court, among other things, said:

" * * * It is not essential that such wilful intent, premeditation, malice aforethought, or deliberation should have existed in the mind of the slayer for any considerable length of time before the actual commission of the crime. If the accused (the defendant)

had a fixed design or intent to maliciously kill said William F. Dilworth, and if the deliberation and premeditation were distinctly formed in his mind at any time before the fatal injury was inflicted, it is enough to justify a finding that it was wilful, deliberate, and premeditated."

In this instruction, the district court expressly told the jury, in effect, not only what would amount to deliberation and premeditation on the part of Brewer, but what would amount to such state of mind on the part of defendant. As said by this court in State v. Kneeskern, supra, quoted in State v. Troy, supra, reading on page 865:

"Premeditation and deliberation need not exist for any particular length of time before the killing, and may be proved by circumstantial evidence."

IV. A complaint also is made because the district court in instruction No. 14 improperly instructed the jury concerning the inference to be drawn from the use of a deadly weapon in a deadly and dangerous way. To begin with, no exception was taken to the instruction which raises the question now argued by the defendant.

Section 13876 of the 1931 Code provides:

"The rules relating to the instruction of juries in civil cases shall be applicable to the trial of criminal prosecutions."

By referring to the law relating to civil trials, it is found that section 11495 of the 1931 Code contains this language:

"Any party may take and file exceptions to the instructions of the court, or any part of the instructions given, or to the refusal to give any instructions as requested, within five days after the verdict in the cause is filed or within such further time as the court may allow, and may include the same or any part thereof in a motion for a new trial, but all such exceptions shall specify the part of the instructions as excepted to, or of the instructions requested and refused *and the grounds of such exceptions.*" (Italics supplied.)

Without a compliance with the statute just quoted, the question is not presented to the district court. Therefore that court in no event has had an opportunity to rule on the question. When the proposition contemplated by section 11495 of the 1931 Code has not been presented to the district court, it cannot be considered

on appeal in this court. State v. Woodmansee (212 Iowa 596), supra, local citation 621, 233 N. W. 725; State v. Bamsey, 208 Iowa 796, local citation 800-801, 223 N. W. 873; State v. Vandewater, 203 Iowa 94, 212 N. W. 339; State v. Burch, 202 Iowa 348, 209 N. W. 474. Section 14010 of the 1931 Code in no way modifies or changes the provisions in sections 11495 and 13876. See cases above cited. Moreover, the instruction now under consideration was approved by this court in State v. Brewer, supra.

V. Again it is said by the defendant that the district court erred in giving instruction No. 11 to the jury. This instruction relates to the guilt of the defendant if he knowingly aided and abetted Brewer in the killing of Officer Dilworth. According to the complaint of the defendant, the instruction is misleading, confusing, and contradictory, in that the first part of the instruction omits, while the latter part of the instruction contains, the statement that the defendant must have acted knowingly in aiding and abetting the commission of the crime.

In the first part of the instruction, the district court referred to the statute relating to the liability of the defendant for aiding and abetting Brewer in the murder of William F. Dilworth. When so instructing, the district court elaborated and explained the law relating to the act of the defendant in aiding and abetting the commission of such crime. But in the latter part of the instruction, the district court told the jury that it must, in addition to the foregoing, find that the defendant knowingly aided and abetted the commission of the crime before he could be guilty as an accessory before the fact. There is no confusion in the instruction when the same is read as a whole.

VI. Nevertheless, it is further argued by the defendant that there must be a reversal because the district court did not properly instruct the jury on the nature of the aiding and abetting which would make him an accessory before the fact. It is said by the defendant that the district court failed to tell the jury that his guilt as an accessory before the fact "must be determined upon the facts which show his part in it, and does not depend upon the degree of the other's guilt." See State v. Marish, 198 Iowa 602, 200 N. W. 5, 7.

A careful review of the record reveals the fact that the defendant does not properly construe the instruction of the district court. That tribunal repeatedly and at appropriate places told the jury that it must convict the defendant alone on his own part in

the crime, and that before that body could convict the defendant it was necessary for them to find that he knowingly aided, abetted, assisted and encouraged the commission of the crime. See State v. McCarty, 210 Iowa 173, 230 N. W. 379. Consequently, when the instructions are read as a whole, it is apparent that there is no basis for the complaint now made by the defendant.

VII. At this point the defendant further argues that there is no evidence in the record which warranted the district court in submitting to the jury the issue of whether the defendant aided and abetted Brewer in murdering Officer Dilworth. What already has been said in division I of this opinion indicates beyond peradventure of doubt that the evidence is sufficient to justify the district court in submitting this issue to the jury.

There are many instances indicating that the defendant aided and abetted the commission of the crime. He and Brewer were constant companions from the time they committed the robbery in Kansas until after the time of the murder of Dilworth. They journeyed together in an automobile from Topeka, Kansas, to Kansas City, Missouri, as before said. While there they acted in concert in deserting the automobile. Likewise they were together when, as before explained, they rode a freight train from Kansas City, Missouri, to Chicago, Illinois. When they were in Chicago, it appears that these men were together. Furthermore, they rode in an automobile bearing an Illinois license from Chicago to Waterloo, Iowa. After they arrived in Waterloo, they were together a great deal. A jury could find that they feared arrest because of the crime committed in Kansas. Together they were watching for an expected officer to arrest them for that crime. Each carried a gun on his person. Both were aware of this fact. As they left the front room in the Graves house to go into the second room for the purpose of avoiding the approaching officers, they were acting in concert. Also when they came out of the bedroom with guns drawn, they were acting in concert, and, when they commenced shooting the officers, they were still acting in concert. While acting in concert, both shot Dilworth.

Obviously there is ample evidence to sustain the action of the district court in submitting to the jury the issue of whether the defendant aided and abetted Brewer in the murder of Dilworth. State v. Davis, 191 Iowa 720, 183 N. W. 314. There it is said, reading on page 725:

"The words 'aid and abet' comprehend all assistance rendered by acts or words of encouragement or support, or presence, actual or constructive, to render assistance, should it become necessary. Not only actual assistance, the supplementing of another's efforts, but also presence for the purpose of such actual assistance as the circumstances may demand or admit of, and the incitement and encouragement which the fact of such presence for such purposes naturally imparts or implies."

When shooting Dilworth, the defendant and Brewer acted in concert to avoid punishment for the Kansas crime. Thereby the defendant knowingly aided and abetted Brewer in the commission of the murder. State v. Davis, supra. See, also, Deemy v. District Court, 215 Iowa 690, 246 N. W. 833.

VIII. The contention is made that the district court erred in admitting into evidence as exhibits the clothing worn by Officer Dilworth at the time he was murdered. These garments were bloody, and therefore the defendant fears they tended to inflame the minds of the jurors. Error appears at this point, the defendant argues, because the clothes were received in evidence after he admitted in the record that " * * * the thirty-two bullet removed from the abdomen of Mr. Dilworth after the shooting was the bullet shot from the thirty-two revolver handled by the defendant Pat Griffin, and puncturing the clothing, belt buckle, and outer layer of skin of the abdomen of Mr. Dilworth."

Of course, the defendant, by making a pretended admission, cannot deprive the state of the full benefit of all competent, relevant, and material evidence. State v. Leitzke, 206 Iowa 365, 218 N. W. 936; State v. Gaskill, 200 Iowa 644, 204 N. W. 213; State v. Kappen, 191 Iowa 19, 180 N. W. 307. Parenthetically it may be noted that the admission here is not co-extensive with the facts. Not only did the bullet pierce the outer layer of the skin of Mr. Dilworth, but it also entered the flesh of his abdomen. By his concession, however, the defendant cannot control the district court's discretion in the admission of the clothing into evidence as exhibits. State v. Leitzke, supra. What was said in State v. Strum, 184 Iowa 1165, 169 N. W. 373, and State v. Vance, 119 Iowa 685, 94 N. W. 204, relied upon by the defendant, to the contrary, has been repudiated by this court. State v. Kappen, supra. See, also, State v. Leitzke, supra. The state is not required to accept the hypothetical admission of a defendant in lieu of evidence otherwise ·admissible. See

cases above cited. Consequently the district court did not abuse its discretion in admitting the exhibits into the record.

 IX. Next, the defendant insists that the instructions of the trial court were not extensive enough or elaborated upon. Therefore the defendant maintains that he may assign error for such failure, although he did not request more complete instructions. This contention of the defendant is overruled in State v. Brewer, supra.

When "instructions are inexplicit, but correct as far as they go (they) are sufficient in the absence of a request for more explicit ones." State v. Christ, 189 Iowa 474, 177 N.W. 54. To the same effect, see State v. Wrenn, 194 Iowa 552, local citation 565, 188 N.W. 697; State v. Lynch, 195 Iowa 560, local citation 565, 566, 192 N.W. 423; State v. Wollert, 199 Iowa 1228, local citation 1232, 201 N.W. 49; State v. Pardoe, 199 Iowa 842, local citation 846, 201 N.W. 75; State v. Kendall, 200 Iowa 483, local citation 487, 203 N.W. 806; State v. Kneeskern (203 Iowa 929), supra, local citation 952, 210 N.W. 465; State v. McCarty (210 Iowa 173), supra, local citation 178, 230 N.W. 379.

The district court in its instructions "covered all the necessary elements of the case". Hence there is no error because the district court did not elaborate further. State v. Kendall, supra.

X. Finally the defendant contends that, when all the instructions are considered, together with the entire proceedings of the trial, he did not have a fair hearing. A similar contention was made in State v. Brewer, supra, but we held that there was no merit in the claim. It is manifest that the instructions, when read as a whole, fully set forth the law as applied to the facts. In the instructions as well as in the rulings on evidence, and in the other proceedings, the defendant received fair treatment. He had a fair trial.

Consideration has now been given to all the material contentions of the defendant, and we find no error in the record.

Our duty in the premises is a serious one. We have endeavored to perform that duty in accordance with its seriousness. As authorized by statute, the jury directed that the defendant's punishment shall be death. Judgment was entered by the district court accordingly. Neither the direction of the jury nor the judgment of the district court can be set aside by us unless error was committed below. After a very careful and complete review of the record, we are unable to discover any error. The record reveals a murder in cold blood. Dilworth was killed when he was conscientiously at-

tempting to perform his duties as an officer. He in no way provoked the assault made upon him. The state, through its legislature, has prescribed the punishment for such a crime. It is a prerogative of the state to preserve itself and its institutions, and protect human life by thus prescribing the penalty for that crime.

Because, then, we are unable to discover error in the action of the district court, our duty to the state requires us to affirm the judgment of that court. Wherefore the judgment of the district court must be, and hereby is, affirmed.—Affirmed.

CLAUSSEN, C. J., and EVANS, STEVENS, ALBERT, ANDERSON, KINTZINGER, and DONEGAN, JJ., concur.